**Freddie HESTER, et al.,
Plaintiffs-Appellees,**

v.

**CITY OF MILLEDGEVILLE, et al.,
Defendants-Appellants.**

No. 85–8010.

United States Court of Appeals,
Eleventh Circuit.

Dec. 11, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 17, 1986.

Charles A. Mathis, Jr., Christopher Coates, Milledgeville, Ga., for defendants-appellants.

John E. Thompson, Atlanta, Ga., for amicus, Amer. Polygraph Asso.

Jerry Boykin, Warner Robins, Ga., for plaintiff-appellees.

Ralph Goldberg, Atlanta, Ga., for amicus, ACLU.

Before VANCE and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

This case presents a constitutional challenge to a decision by the City of Milledgeville to require its firefighters to undergo polygraph examinations. The district court, 598 F.Supp. 1456, held the examination requirement unconstitutional and enjoined the city from conducting further examinations and from taking any disciplinary action based upon the results of the testing. We reverse in part and affirm in part.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1494

## I.

In 1983, officials of the City of Milledgeville [1] became concerned that city firefighters were involved in illegal drug activity. This concern led the city council to authorize the fire department to require employees to undergo polygraph testing. The council's resolution on the subject provided that testing was to be "specifically directed and narrowly related to a particular internal investigation," and that results of the testing could not be used as the "sole basis for taking disciplinary action against any employee."

Soon thereafter the city's fire chief announced that polygraph testing would be required of all fire department employees. Before being tested, each employee would be required to sign one of four forms. One provided that the results of the polygraph examination could be used in a judicial proceeding or administrative hearing. Another was a waiver of all state and federal constitutional rights in connection with the examination. The third preserved all constitutional rights and permitted the employee to object to incriminating questions. [2] The fourth was a refusal to submit to the polygraph testing.

The plaintiffs in this action, and indeed most department employees, were never tested. After the plaintiffs objected to the examination, the city agreed to postpone testing until the legality of the procedure was determined in court. Nine department employees, however, were examined. All nine signed the form preserving their constitutional rights. Although the polygraph examiner reported two of the nine as deceptive, no disciplinary action was taken.

In their complaint, the plaintiffs contended that the department's examination policy violated the first amendment guarantee of freedom of speech and fifth amendment privilege against self-incrimination as incorporated by the fourteenth amendment, the fourteenth amendment equal protection and due process clauses in their own right, and the constitutional right to privacy. [3] The district court held for the plaintiffs on the self-incrimination, due process, and privacy issues [4] and issued a permanent injunction prohibiting the city from requiring the plaintiffs to submit to polygraph testing, taking disciplinary action on the basis of the previously completed testing in the absence of independent evidence of wrongdoing, or disciplining any employee for refusing to be tested.

## II

### A. Self-Incrimination.

The district court found that the city had infringed upon the plaintiff's constitutional privilege against self-incrimination by offering the plaintiffs the option to waive the privilege and by requiring the plaintiffs to undergo polygraph examination without offering them use immunity. We agree that the city burdened plaintiffs' fifth amendment privilege in its offering of options but not in refusing use immunity.

The city may without violating the privilege simply order these plaintiffs to take a polygraph test so long as it abides by the conditions that it has set forth: employees may not be required to waive any rights nor will the results serve as the sole ground for action against them. [5] The

1. We refer to the City of Milledgeville and the two individual defendants, both city officials, collectively as "the city."

2. It also contained, however, a release of the polygraph examiner from all liability.

3. The Supreme Court has been less than completely clear as to in what part of the Constitution the right to privacy is grounded. *See, e.g., City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 419, 103 S.Ct. 2481, 2487, 76 L.Ed.2d 687 (1983) (referring only to the "concept of personal liberty guaranteed by the

Constitution"). The district court considered the plaintiffs' privacy claim to be based upon the due process clause, although their complaint cited the ninth amendment.

4. The equal protection and free speech arguments were not advanced at trial and are not before us.

5. We express no opinion on possible due process arguments should these tests be used for disciplinary purposes. As noted below, those arguments are not before us in a situation concrete enough for review.

privilege against self-incrimination, limited by its terms to "any criminal case," does not prevent a governmental unit from taking non-criminal disciplinary action against an employee on the basis of compelled testimony. The district court correctly noted, however, that a governmental unit which requires an employee to make potentially incriminating statements may not burden the employee's right to exercise the privilege in a later criminal proceeding by threatening to discipline or discharge the employee if he or she refuses to waive it. *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).[6] We further agree with the district court that under *Garrity* and its progeny, *see, e.g., Lefkowitz v. Cunningham,* 431 U.S. 801, 804–05, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977); *Gardner v. Broderick,* 392 U.S. 273, 278–79, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968), the city may not consider the refusal to waive the privilege as a black mark upon an employee's record.

■ What remains at issue here is whether the city's system of "waiver forms" serves to coerce its employees to waive their rights. The district court recognized that it had that potential and we agree. The city council's resolution requires employees to execute a "waiver" without specifying what is being waived.[7] The employees are then presented with four pieces of paper called waiver forms and required to choose from among them. They know that if they choose the form by which they refuse to take the polygraph exam they will lose their jobs. This is, then, an inherently coercive situation. By signing any of the remaining three forms they agree to take the test. One of these preserves the right against self-incrimination; the other two waive it.

There is nothing on the face of the documents to indicate that the city has no right to demand either of the latter two options or that the city cannot punish employees who refuse to choose them. It is entirely plausible that laypersons faced with the three positive options with no disclaimer may feel that to save their jobs they must sign the form most generous and accommodating to their employer. Subtle pressures may be as telling as coarse and vulgar ones. *Garrity v. New Jersey,* 385 U.S. 493, 496, 87 S.Ct. 616, 618, 17 L.Ed.2d 562 (1967). Such waivers may not even be knowing and intentional and thus may violate the standards of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and its progeny. The possible ineffectiveness of the waiver, however, does not save the practice. *Gardner,* 392 U.S. at 278–79, 88 S.Ct. at 1916. The privilege against self-incrimination is too important to be trifled with in this manner. Because this improper presentation of options forces laypersons in an inherently

**6.** We recognize that the *Garrity* line of cases did not deal with polygraph testing. As far as the privilege against self-incrimination is concerned, however, we can discern no constitutional difference between polygraph testing and other forms of compelled testimony. Even if polygraph examination is of questionable reliability—an issue we do not consider today—that would not indicate any violation of the privilege. At best, it might raise a due process question. As we discuss below, we conclude that the due process issue is not currently ripe for review.

**7.** The city council's resolution authorizing polygraph testing stated that employees could be subject to disciplinary action for refusing "to sign documents necessary for the administration of a polygraph examination, including the refusal to sign a waiver." Although ambiguous, this provision may use the term "waiver" to refer to a release of the polygraph examiner and the State of Georgia from liability in connection with the testing. *See* fn. 2 *supra.* Such a release may reasonably be construed to be a "document[ ] necessary for the administration of a polygraph examination" in that the court is told that the Georgia Bureau of Investigation, which conducted the testing already done, will not administer an examination until such a release is signed. Consequently, even the form which permits an employee to preserve all constitutional rights includes a waiver of liability. A waiver of the privilege against self-incrimination, on the other hand, is clearly not necessary to the administration of the test. Whether plaintiffs can constitutionally be required to waive liability was not presented to the district court and is not now before us. Consequently, our decision should not be read to foreclose relief in connection with that requirement.

coercive situation to choose from among options two of which the city has no right to require, the district court must be affirmed on this point. Its injunction must remain in effect until the offending options are removed or sufficient information and assurances presented to the employees to guarantee a knowing and voluntary waiver.

 We fail, however, to see how the city's failure to offer the plaintiffs use immunity could make any constitutional difference. Use immunity, of course, would guarantee that any incriminating testimony derived from the plaintiffs' polygraph examinations would not be used against them in a criminal proceeding. Such a guarantee would serve no useful purpose, however, because under *Garrity* the results of a mandatory polygraph examination cannot be used in a criminal proceeding against the subject even absent an explicit grant of use immunity. The natural corollary to the rule that one cannot be compelled to give evidence against one's self in connection with a criminal case is that if one *is* compelled to give evidence against one's self, that evidence cannot be used in a criminal case. *See Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964) (testimony compelled in state proceeding may not be used in later federal prosecution). *Garrity* itself was a criminal case in which the Supreme Court reversed the petitioner's convictions on the ground that they were based on compelled out-of-court statements. *See Garrity*, 385 U.S. at 495, 87 S.Ct. at 617. In essence, the privilege against self-incrimination affords a form of use immunity which, absent waiver, automatically attaches to compelled incriminating statements as a matter of law. Given this, any grant of use immunity to the plaintiffs would have been duplicative. *See Gulden v. McCorkel*, 680 F.2d 1070, 1073–76 (5th Cir.1982).

**B.** *Due Process*

 The district court also found that the polygraph testing could lead to a violation of the plaintiffs' due process rights by depriving them of a meaningful opportunity to be heard.[8] The court thus enjoined the city from taking any disciplinary action based on the polygraph results in the absence of independent evidence of wrongdoing. We conclude that an injunction is premature at this point.

The city's official policy on polygraph testing provides that "in no event shall the results of ... a polygraph examination be used as the sole basis for taking of disciplinary action against any employee." Nothing in the record indicates that the city intends to violate that policy. Thus, the question whether the city could constitutionally discipline the plaintiffs solely on the basis of the polygraph results is predicated upon a possibility too speculative to support an injunction. *See Connecticut v. Massachusetts*, 282 U.S. 660, 673, 51 S.Ct. 286, 290, 75 L.Ed. 602 (1931) (injury must be "actual or presently threatened" to support injunction). We are also unprepared to conclude at this point that the city must always have evidence of wrongdoing unrelated to a polygraph examination before it may take disciplinary action. Even if polygraph testing is often unreliable, it might still be proper for the city to rely upon information derived from such testing if the circumstances of a particular case indicate that the specific information to be relied upon is valid. Consideration of this issue must therefore await a case presenting the issue in a less abstract manner.

**C.** *Right to Privacy*

 The court also concluded that the use of "control questions" in the polygraph examinations is a violation of the constitu-

---

**8.** The district court also stated in its opinion that the results of the polygraph testing, if released to the public, could damage the "good name and reputation" of the firefighters and thus deprive them of a protected liberty interest. The court did not, however, order any relief

directed toward preventing such a violation of due process. We do not address this dictum except to note that there is nothing in the record to indicate that the city intends or is likely to release the test results to the public.

tional right to privacy. Control questions are designed to evoke a deceptive or nervous response from everyone tested. The tested Milledgeville firefighters, for example, were asked whether they had ever done anything which, if discovered, would have resulted in their dismissal or would have discredited the department. It is presumed that a subject innocent of the matter under investigation will be more concerned with the control questions than with the relevant questions, whereas a guilty subject will show more concern as to the relevant questions.

The "individual interest in avoiding disclosure of personal matters," *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), is protected by the "confidentiality strand" of the constitutional right to privacy. *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). In *Plante,* we held that the constitutionality of state action alleged to have violated this right to confidentiality must be determined by use of a balancing test: by "comparing the interests [the action] serves with those it hinders." *Id.* at 1134.

The city's interest in using control questions to improve the accuracy of the polygraph testing is an important one, especially since the testing was directed toward improving the public's safety by ferreting out drug problems in the fire department. At the same time, the specific control questions at issue here constitute only a limited intrusion into the sphere of confidentiality. The questions were general in nature, were asked for a specific, limited purpose, and, although potentially embarrassing, avoided the issues such as those related to marriage, family and sexual relations generally considered to be the most personal. We therefore conclude that the balancing test reveals no constitutional problem with the proper use of control questions such as the ones at issue here.

We emphasize *proper* use. We would have reservations if the city or any governmental unit were to use a subject's response to a control question for any purpose other than comparing the polygraph reading for the control question to the same subject's reaction to a relevant question. There is, however, no indication that the city plans to take disciplinary actions based on the control questions, release the responses to the public, or even make the responses a part of the subjects' employment records. We also note that there might well be a point at which a control question is so embarrassing or specific, or concerns so personal a matter, as to render the question unconstitutional even when asked for a proper purpose. That point, however, has not yet been reached here.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.