14 F.3d 993
 John J. WILEY, Sergeant; Charles Bealefeld, Officer; Harry
Van Cleaf, Officer; Joseph Struck, Officer; Thomas Tomsho,
Officer; Fraternal Order of Police, Baltimore City Lodge 3,
Incorporated, Plaintiffs-Appellees,
v.
Timothy DOORY, Individually and in his official capacity as
Assistant State's Attorney for Baltimore City
State Attorney's Office, Defendant-Appellant,
and
Mayor and City Council of Baltimore; State of Maryland;
Baltimore City Police Department; Edward Tilghman,
Commissioner of the Baltimore City Police Department;
Stuart Simms, State's Attorney for the Baltimore City State
Attorney's Office, Defendants.
 No. 93-1759.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 9, 1993.
Decided Jan. 27, 1994.
 
 ARGUED: Diane Krejsa, Asst. Atty. Gen., Baltimore, MD, for Appellant. Michael Lawrence Marshall, Schlachman, Belsky & Weiner, P.A., Baltimore, MD, for Appellees. ON BRIEF: J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore, MD, for Appellant. Herbert R. Weiner, Schlachman, Belsky & Weiner, P.A., Baltimore, MD, for Appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and WILLIAMS, Circuit Judges.
 
 OPINION
 POWELL, Associate Justice:
 
 1
 On December 7, 1987, a shooting occurred in which involvement by Baltimore City Police officers was suspected.[1] Appellant/Defendant Timothy J. Doory, as Assistant State's Attorney for Maryland, participated in a criminal and an internal investigation of the incident.[2] During the course of this investigation, Appellees/Plaintiffs Sergeant John J. Wiley, Officer Charles Bealefeld, Officer Paul Deachilla, and Officer Harry Van Cleaf were interrogated and called to testify before a grand jury.[3]
 
 
 2
 Appellees were also ordered to take polygraph examinations. Officers Bealefeld, Deachilla, and Van Cleaf were told that "they were being given a direct order and refusal would result in immediate suspension." J.A. at 33, p 36. Sergeant Wiley "was ordered by Doory and police department representatives to take a State Police administered polygraph test upon threat of punishment, including the loss of his job." Id. at p 40. Only Officer Van Cleaf initially refused to take the examination. J.A. at 32, p 33. After the threats, each Appellee took the required test. None of the officers alleges that he asserted, or attempted to assert, his Fifth Amendment rights. The results as to Officers Bealefeld, Deachilla, and Van Cleaf indicated that their responses were truthful; the results as to Sergeant Wiley were inconclusive. The officers were not compelled to waive their Fifth Amendment rights, no charges were ever brought against them, and their statements have never been used against them.[4]
 
 
 3
 The officers brought this action pursuant to 28 U.S.C. Secs. 2201, 2202 (1988 & Supp.1992), and 42 U.S.C. Sec. 1983 (1988 & Supp.1991), claiming a violation of their Fourth, Fifth, and Fourteenth amendment rights and seeking declaratory, injunctive, and monetary relief. Doory appeals from the district court's denial of his motion to dismiss, on the basis of qualified immunity, the police officers' claims for damages pursuant to Sec. 1983 and the Self-Incrimination Clause of the Fifth Amendment.[5] See Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985) (holding that the denial of a claim of qualified immunity is an appealable final decision). The only issue before this Court is whether Doory is entitled to qualified immunity.[6]
 
 
 4
 * Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992) (citing Tarantino v. Baker, 825 F.2d 772, 774-75 (4th Cir.1987), cert. denied, 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989)), cert. denied, --- U.S. ----, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. Tarantino, 825 F.2d at 775.
 
 
 5
 Applying these principles, we conclude that Doory's conduct did not violate any clearly established right.[7]
 
 II
 
 6
 The police officers contend that compelling them to take the polygraph examinations by the threat of job loss violated their right against self-incrimination, notwithstanding that the statements have never been used against them. They further claim that the unconstitutionality of such coercion was clearly established at the time of Doory's alleged conduct. Doory argues that no violation of the Self-Incrimination Clause occurred because the officers were not required to waive their Fifth Amendment rights, and the statements by the police officers were never used against them in a criminal proceeding. In the alternative, Doory contends that, even assuming that a violation occurred, the law regarding such a violation was not clearly established at the time of his actions.
 
 
 7
 Upon consideration of Appellant Doory's motion to dismiss, the district court rejected his contentions. The district court concluded that "an individual, including a police officer, is deprived of his or her Fifth Amendment rights when forced by the government during a criminal investigation to answer questions or face job forfeiture." J.A. at 19. It noted, however, that there would be no violation if the officers had been offered use immunity and derivative use immunity. J.A. at 11. But the district court concluded that a constitutional violation occurs where, as here, "the coerced answers are given in the course of an investigation solely or even in part to result in a prosecution of the witness, so that those indicating [sic] the criminal investigation are provided the answers, there has been no effective immunity and there has been an improper coercion of the witness' answers." J.A. at 14-15. In addition, although the district court recognized that "a number of courts" had taken a position contrary to its own on the substantive legal question, see J.A. at 16 n. 13, it found that the law was clearly established. We do not agree.
 
 III
 
 8
 Both the district court and the police officers rely principally upon several Supreme Court cases that address the application of the Fifth Amendment privilege to public employees. See, e.g., Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). These cases provide two rules:
 
 
 9
 If the State presents a person with the "Hobson's choice" of incriminating himself or suffering a penalty, and he nevertheless refuses to respond, the State cannot constitutionally make good on its threat to penalize him. [Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) ]; Sanitation Men v. Commissioner of Sanitation, 392 U.S. 280, 284 [88 S.Ct. 1917, 1919, 20 L.Ed.2d 1089] (1968); Gardner v. Broderick, 392 U.S. 273, 277-278 [88 S.Ct. 1913, 1915-1916, 20 L.Ed.2d 1082] (1968). Conversely, if the threatened person decides to talk instead of asserting his privilege, the State cannot use his admissions against him in a subsequent criminal prosecution. Garrity v. New Jersey, 385 U.S. 493, 500 [87 S.Ct. 616, 620, 17 L.Ed.2d 562] (1967).
 
 
 10
 Minnesota v. Murphy, 465 U.S. 420, 443, 104 S.Ct. 1136, 1151, 79 L.Ed.2d 409 (1984) (Marshall, J., dissenting). This case, however, is not directly controlled by either of these two rules. The officers did not assert their Fifth Amendment privilege nor were they disciplined for doing so. And, although it is alleged that the officers made statements under the threat of job loss, these statements were not used against them in any criminal proceeding. Therefore, contrary to the district court's conclusion, the Gardner- Garrity line of Supreme Court cases does not clearly establish the law governing the facts of this case.
 
 
 11
 Indeed, although the issue here was not squarely presented in any of the Supreme Court cases upon which the police officers rely, language in these cases suggests that the right against self-incrimination is not violated by the mere compulsion of statements, without a compelled waiver of the Fifth Amendment privilege or the use of the compelled statements against the maker in a criminal proceeding.[8] See, e.g., Uniformed Sanitation Men, 392 U.S. at 285, 88 S.Ct. at 1920 ("[P]etitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.") (emphasis added); Gardner, 392 U.S. at 277-79, 88 S.Ct. at 1915-17 (holding that firing a police officer for refusing to waive his Fifth Amendment privilege violated the right against self-incrimination) (emphasis added); Garrity, 385 U.S. at 500, 87 S.Ct. at 620 (holding that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic") (emphasis added). Given this language, we conclude that the Supreme Court has not decided whether the specific conduct alleged in this case violates the Fifth Amendment.IV
 
 
 12
 Furthermore, other circuit courts have interpreted the Gardner- Garrity line of cases to hold that compelling employees to make statements by threatening disciplinary action does not violate the Self-Incrimination Clause as long as the employees are not compelled to waive their rights against self-incrimination. See Hester v. Milledgeville, 777 F.2d 1492 (11th Cir.1985); Gulden v. McCorkle, 680 F.2d 1070, 1074 (5th Cir.1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983).
 
 
 13
 In Hester, a city council authorized its fire department to require firefighters to take polygraph examinations because of suspected involvement by firefighters in illegal drug activity. Hester, 777 F.2d at 1494. The Eleventh Circuit held that the fire department could not constitutionally require the firefighters to choose between waiver forms, two of which included waivers of their Fifth Amendment privilege, because presenting such a choice amounted to coercion to waive their constitutional rights. Id., at 1494-96. The Hester court also held, however, that as long as the "offending forms" were not used, the fire department could compel the taking of the tests without providing use and derivative use immunity. Id. at 1496. The Eleventh Circuit reasoned that because Garrity would prevent the use of any of the statements in a criminal proceeding, any immunity would be duplicative. Id. Therefore, under the Eleventh Circuit's rationale, the right against self-incrimination is not violated unless a waiver of the privilege is compelled or unless the statements are used against the maker in a criminal proceeding.
 
 
 14
 Similarly, the Fifth Circuit held that "it is the compelled answer in combination with the compelled waiver of immunity that creates the Hobson's choice for the employee." Gulden, 680 F.2d at 1074 (emphasis in original). In Gulden, employees of the Department of Public Works, who were suspected of making a bomb threat, were discharged for refusing to submit to polygraph tests. Id. at 1071-72. The Fifth Circuit held that the terminations did not violate the employees' rights against self-incrimination because they had not been required to waive their Fifth Amendment privilege. Id. at 1073-75. Furthermore, the Gulden court reasoned that no affirmative grant of immunity from use in criminal proceedings was required because Garrity provided such immunity. Id. at 1075.[9]
 
 
 15
 Thus, at the time of Appellant Doory's conduct, at least two circuits had held that the mere compulsion of statements did not violate the Self-Incrimination Clause.[10] See also United States v. Friedrick, 842 F.2d 382, 394-96 (D.C.Cir.1988) (interpreting "the Garrity-Lefkowitz- Murphy line of authority" to mean that if one reasonably believes that he may lose his job if he does not speak, then the privilege is self-executing and may not be used, or derivatively used, to impose criminal penalties against him); Taylor v. Best, 746 F.2d 220, 224 (4th Cir.1984) ("In ... Uniformed Sanitation Men, the court implied that no fifth amendment right would have arisen if the state had not sought to compel waiver of immunity."), cert. denied, 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985); Confederation of Police v. Conlisk, 489 F.2d 891 (7th Cir.1973) (holding that suspending or discharging police officers solely due to their invocation of their Fifth Amendment privilege before a grand jury violated the Self-Incrimination Clause), cert. denied, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). The existence of circuit authority contrary to the officers' position supports, at the least, the conclusion that the right upon which they claim Doory infringed is not clearly established.
 
 
 16
 Today, approximately six years after Doory's alleged conduct, the law remains unsettled. In 1992, the Ninth Circuit sitting en banc held that mere compulsion may violate the Self-Incrimination Clause. See Cooper v. Dupnik, 963 F.2d 1220, 1242 (9th Cir.) (en banc) (finding that a Sec. 1983 claim for a violation of the Self-Incrimination Clause was stated by allegations that statements were compelled, even though the statements were never used), cert. denied, --- U.S. ----, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992). The dissents in Cooper, however, make persuasive arguments that the privilege against self-incrimination is not violated until the evidence is admitted in a criminal case. Id. at 1253-55 (Brunetti, J., dissenting); id. at 1256-58 (Leavy, J., dissenting). The disagreement between the judges of the Ninth Circuit as to the correct interpretation of the relevant constitutional principles indicates that even at the time of the Cooper decision, the law was not clearly established. See Ward v. Johnson, 690 F.2d 1098, 1112 (4th Cir.1982) (en banc). In any event, Cooper was not decided until more than four years after the conduct at issue here and, as such, may not be relied upon as the clearly established law at the time of Doory's alleged actions.[11]
 
 V
 
 17
 For the foregoing reasons, we therefore conclude that the specific constitutional right allegedly violated in this case, if such a right exists, was not clearly established. Thus, appellant Doory is entitled to qualified immunity. Accordingly, the order of the district court regarding the availability of qualified immunity to Doory as to the Fifth Amendment claims is
 
 
 18
 REVERSED.
 
 
 
 [1]
 For the purposes of this appeal, we assume that the allegations of the complaint are true. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). We review de novo the district court's conclusions of law. Id
 
 
 [2]
 There were other Defendants named in the complaint, but Doory is the only one involved in this appeal
 
 
 [3]
 Two other Plaintiffs also brought suit; they are not involved in this appeal
 
 
 [4]
 Indeed, prior to requiring the officers to take the tests Doory informed them that they were not suspects
 
 
 [5]
 The privilege against self-incrimination applies to the states through the fourteenth amendment. Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964)
 
 
 [6]
 The district court also held that Doory was not protected by absolute immunity. This issue is not before us
 
 
 [7]
 Because we find that the constitutional right, if any, was not clearly established, we need not address whether the Law Enforcement Officers' Bill of Rights, see Md. Crimes and Punishments Code Ann. Secs. 727-734D (1987 & Supp.1991), provides both use and derivative use immunity or whether the state must affirmatively provide immunity when the privilege is not asserted. See Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972)
 
 
 [8]
 The language of the Self-Incrimination Clause supports Doory's claim that it is the use of the compelled statements, or a compelled waiver of such use, that is constitutionally objectionable. The Fifth Amendment provides in part that "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V
 
 
 [9]
 The Fifth Circuit stated that the result might be different if the employees had appeared for the test and had been punished for asserting their privilege as to specific questions. Id
 
 
 [10]
 The police officers attempt to distinguish both Hester and Gulden on their facts. They claim that the holdings of Hester and Gulden apply only to cases involving purely internal investigations, whereas here the investigation was both internal and criminal. The mere existence of a criminal investigation, however, does not make Hester and Gulden distinguishable. In any event, to the extent the distinction has merit, it is one that is not clear from the Fifth and Eleventh Circuit opinions
 
 
 [11]
 The police officers' reliance upon Gray v. Spillman is similarly misplaced. Gray v. Spillman, 925 F.2d 90, 94 (4th Cir.1991) (holding that the plaintiff, who claimed that he was beaten in an attempt to coerce an incriminating statement, stated a Sec. 1983 claim for violations of the Fifth and Fourteenth Amendments). Gray was not issued until 1991, also several years after appellant Doory's alleged conduct. Moreover, Gray relies on cases involving violations of the Due Process Clause rather than the Self-Incrimination Clause
 Language in other cases, upon which the police officers rely, arguably lends some support to their claim that the right against self-incrimination is violated at the time of compulsion. See, e.g., United States v. North, 920 F.2d 940, 948 (D.C.Cir.1990) (per curiam) ("We believe--as do five of our sister circuits ...--that grand jury consideration of evidence already unconstitutionally compelled and grand jury consideration of immunized testimony fall on different sides of this fence. In the former context, such as where Miranda warnings are not given, the constitutional violation occurs independent of the grand jury."), cert. denied, --- U.S. ----, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). The decision in North, however, was also subsequent to appellant Doory's alleged conduct. Moreover, to the extent that this language may state accurately the law, it is counter to the holdings in the Fifth and Eleventh Circuits.