61 F.3d 900
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank O. MARSHALL, Sr., Individually and on behalf of all
others similarly situated; Angela C. Marshall,
Plaintiffs-Appellants,
v.
Patrolman ILCZUK, Patrolman First Class, In her individual
capacity; Mayor and City Council of Berlin; Donald Turner,
Individually and in both official and individual capacities
and on behalf of all other similarly situated district court
commissioners, Defendants-Appellees.
 No. 94-2388.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 5, 1995.
Decided: July 26, 1995.
 
 ARGUED: Peter Ayers Wimbrow, III, Ocean City, MD, for Appellants. Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Appellees. ON BRIEF: Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, MD for Appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and MOTZ, Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Frank O. Marshall, Sr. and Angela C. Marshall appeal from the district court's order granting summary judgment in favor of Tracey Ilczuk and the Mayor and City Council of Berlin, Maryland. Finding no reversible error, we affirm.
 
 I.
 
 2
 This case arises out of a hit-and-run accident that occurred on November 1, 1992 when a county bus struck a parked van in Berlin, Maryland. The van's owner immediately reported the accident to Ilczuk, an officer of the Berlin Police Department who was on duty at the time. After conducting an initial investigation, Officer Ilczuk telephoned Marshall, a county bus driver, and asked him to come down to the police station for questioning. Marshall complied, initially denying any involvement in or knowledge of the accident and signing a written statement to that effect. Marshall was then informed that he was under arrest in connection with the accident.
 
 
 3
 Marshall was taken to a holding cell for approximately one hour, where he was approached by Corporal Robinson, also of the Berlin Police Department. Corporal Robinson allegedly offered to drop the charges against Marshall if he agreed to provide the police with certain drug information. Marshall refused, claiming he had no such information. The officers brought Marshall back to the interview room, where they allegedly told him that they would release him if he confessed to the hit-and-run accident. Marshall complied, signing a second written statement to that effect. He was issued a citation and released, allegedly after being told that he would be picked up again if he failed to provide the police with the requested drug information.
 
 
 4
 Over the next few days Officer Ilczuk allegedly called Marshall to inquire about the drug information. Marshall again claimed he had no such information. On November 18, 1992, Officer Ilczuk applied to District Court Commissioner Donald E. Turner for a Statement of Charges alleging a violation of Article 27, Sec. 150 of the Maryland Code, which prohibits the making of a "false statement, report or complaint" to a law enforcement officer "with intent to cause an investigation or other action to be taken as a result thereof." The commissioner issued a warrant for Marshall's arrest, which was subsequently executed on November 23, 1992, and a trial date was set for early 1993. Marshall was released on his own recognizance, and the state ultimately entered a nolle prosequi in the case.
 
 
 5
 Marshall and his wife filed this action in state court against Officer Ilczuk, Commissioner Turner, and the Mayor and City Council of Berlin, asserting claims under the First, Fourth, and Fourteenth Amendments and state constitutional and common law claims. The officials removed the case to the United States District Court for the District of Maryland. The district court dismissed all of Marshall's claims against Commissioner Turner and all state claims against Officer Ilczuk and the Mayor and City Council; Marshall has not appealed from those dismissals. As to Marshall's claims under 42 U.S.C. Sec. 1983 against Officer Ilczuk and the Mayor and City Council of Berlin, the district court granted the defendants' motion for summary judgment, and this appeal followed.
 
 II.
 
 6
 We review a district court's grant of summary judgment de novo, employing the same standards applied by the district court. Temkin v. Frederick County Commissioners, 945 F.2d 716, 718 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1172 (1992). The standard for summary judgment is whether, viewing the evidence in the light most favorable to the non-moving party, there is any genuine issue of material fact. Id.; Fed.R.Civ.P. 56. Summary judgment should be granted in those cases in which "it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." McKinney v. Board of Trustees, 955 F.2d 924, 928 (4th Cir.1992).
 
 A.
 
 7
 Marshall first contends that the district court erred in affording Officer Ilczuk qualified immunity on his Fourth Amendment claim. He asserts that his initial statements to Officer Ilczuk were not made "with intent to cause an investigation or other action" in violation of Article 27, Sec. 150 of the Maryland Code, and that Officer Ilczuk therefore lacked probable cause to apply for an arrest warrant. The district court granted summary judgment in favor of Ilczuk, concluding that even if Marshall had not violated Article 27, Sec. 150, Officer Ilczuk nevertheless "could have reasonably believed that lying to an officer constitutes probable cause to arrest, i.e., to believe that Marshall had committed a criminal offense" and that she was "justified in relying on Commissioner Turner's [arrest warrant] because her application for a warrant was objectively reasonable in its determination of probable cause."
 
 
 8
 The Supreme Court has held that government officials performing discretionary functions are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In this case, the relevant Fourth Amendment standard is "whether a reasonably well-trained officer in [Ilczuk's] position would have known that [her] affidavit failed to establish probable cause and that [s]he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345 (1985) (footnote omitted). Probable cause consists of "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. Defilippo, 443 U.S. 31, 37 (1979); see also Hunter v. Bryant, --- U.S. ----, ----, 112 S.Ct. 534, 537 (1991). More specifically,
 
 
 9
 [w]hether probable cause exists in a particular situation therefore always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct. Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both.
 
 
 10
 Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992) (citations omitted).* Marshall contends that it is the latter factor--Officer Ilczuk's legal misunderstanding of the reach of Article 27, Sec. 150--that rendered his arrest here unconstitutional.
 
 
 11
 As stated above, Article 27, Sec. 150 prohibits the making of a false statement to a law enforcement officer "with intent to cause an investigation or other action to be taken as a result thereof." Whether the plain language of the statute proscribes Marshall's initial statements to Officer Ilczuk is unclear at best; arguably the requirement that "other action ... be taken as a result" of Marshall's false statements was met here. Cf. Pritchett, 973 F.2d at 314-15 (court rejected police officers' "extreme interpretation" of relevant statute). However, Marshall argues that the decision of the Maryland Court of Appeals in Choi v. State, 560 A.2d 1108 (Md.1989), served to "clearly establish" his right not to be arrested under Sec. 150 for false statements made during the course of an investigation.
 
 
 12
 The defendant in Choi was a witness who refused to testify at her father's murder trial. The defendant had initially told detectives that her father was guilty of murder but later apparently changed her story, insisting instead that he had acted in self-defense. The defendant
 
 
 13
 sequently refused to testify for fear of incriminating herself, asserting that a change of story would evidence that she had made a false statement to police officers and so violated Sec. 150. The state argued that the defendant was not entitled to invoke the privilege against compelled self-incrimination because, although her false statements were proscribed by Sec. 150, prosecutions for such offenses were rare.
 
 
 14
 The Maryland Court of Appeals concluded that the defendant "could reasonably have sensed the peril of prosecution under Art. 27, Sec. 150, and it was not perfectly clear that her answers could not possibly have incriminated her under that statute." 560 A.2d at 1116 (footnote and internal quotations omitted). The Court explained that "[a] necessary predicate for this holding is that the State, both in the trial court and in this Court, has insisted that Art. 27, Sec. 150, encompasses statements requested by and given to an investigating police officer under circumstances like those in the present case." Id. After reaching this conclusion, the Court observed in dicta that Sec. 150 "does not expressly proscribe a false response to police questioning after an investigation has already begun" because "an element of the offense is the intent to cause an investigation or other action to be taken," and, in the court's view, "this element is not satisfied when a false statement results from an interview as part of an ongoing police investigation." Id. at 1116-17. Accordingly, the Choi Court mandated a new rule "[f]or purposes of future attempts to invoke the privilege against compelled self-incrimination in similar circumstances." Id. at 1116. The Court explained that while a defendant "previously had a reasonable basis to fear prosecution because of the State's interpretation of Art. 27, Sec. 150, henceforth a witness under the same circumstances will not be entitled to invoke the privilege against self-incrimination based upon the possibility of prosecution under Sec. 150." Id. at 1117.
 
 
 15
 Clearly, after Choi a witness under similar circumstances would not be entitled to invoke the privilege against compelled selfincrimination for fear of prosecution under Sec. 150 because, in view of the Court of Appeals' directive in Choi, the government could not prosecute the witness for violation of Sec. 150. But that is not to say that the right of other persons not to be arrested for making false statements during the course of an investigation was therefore "clearly established" for qualified immunity purposes and that a reasonably well-trained law enforcement officer would have necessarily lacked probable cause under Sec. 150 to apply for a warrant and effect an arrest for such statements. This is not a case where officials seek to enforce a statute after it has been declared unconstitutional by the state's highest court, cf. Swanson v. Powers, 937 F.2d 965 (4th Cir.1991), cert. denied, 502 U.S. 1031 (1992), or where officials seek to rely on a new statute to eliminate pre-existing substantive property rights. Cf. Garraghty v. Virginia, 52 F.3d 1274 (4th Cir.1995). Nor is this a case where the right at issue, although not "already specifically adjudicated," is nevertheless "manifestly included within more general applications of the core constitutional principle invoked." Cf. Pritchett, 973 F.2d at 314-15.
 
 
 16
 The language of Sec. 150 is ambiguous. Moreover, the holding in Choi was explicitly limited to the right to invoke the privilege against compelled self-incrimination. To the best of our knowledge, no Maryland court has ever specifically held that false statements made during the course of an ongoing investigation are not prohibited under Sec. 150. Cf. Attorney Grievance Commission of Maryland v. Rohrback, 591 A.2d 488, 494-95 (Md.1991) (attorney's knowledge of client's false statement to police officer during investigation was not an ethical violation, because an offense under Sec. 150 "requires an intent to cause an investigation or other action of the same general nature"). A principle established in one context does not necessarily control in another. See Barts v. Joyner, 865 F.2d 1187, 1191 (11th Cir.) (Supreme Court decision in direct criminal appeal, although "pertinent to" a civil case, was "too different in its facts to have settled the law applicable to the facts" of that case), cert. denied, 493 U.S. 831 (1989). "Defendants' failure to discover and appreciate the significance of dicta ... is hardly a legitimate rationale for depriving them of qualified immunity." Hodge v. Jones, 31 F.3d 157, 167 n. 11 (4th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 581 (1994). "The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established." Swanson, 937 F.2d at 968.
 
 
 17
 As the Supreme Court has observed, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials--like other officials who act in ways they reasonably believe to be lawful--should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir.1988) ("it is precisely the function of qualified immunity in this context to excuse reasonable mistakes in making the composite factual and legal judgments leading to the arrests"). The qualified immunity defense is designed to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law," Malley, 475 U.S. at 341, and when a "legitimate question" exists as to whether an officer's conduct constitutes a constitutional violation, the officer is entitled to qualified immunity. Wiley v. Doory, 14 F.3d 993, 995 (4th Cir.1994). Accordingly, the district court properly concluded that Officer Ilczuk was entitled to summary judgment on qualified immunity grounds as to Marshall's Fourth Amendment claim.
 
 B.
 
 18
 Marshall also contends that the district court erred in granting summary judgment to Officer Ilczuk on his claims under the First and Fifth Amendments. The court concluded that Marshall had not alleged sufficient factual support for his claims.
 
 
 19
 With respect to his claim under the Fifth Amendment, Marshall contends that he was "coerced into a confession by incarceration." Tellingly, it is not Officer Ilczuk, but Corporal Robinson (whom Marshall did not sue), whom Marshall asserts "coerced" his confession. Marshall does not even assert that he was unlawfully detained by Officer Ilczuk. Rather, he concedes that "certainly, PFC Ilczuk had the right to arrest Mr. Marshall on November 4, 1992, because she had probable cause to believe he had violated" Maryland's hit-andrun statute. In light of these admitted facts, and in the absence of any other evidence demonstrating that Officer Ilczuk used coercive tactics in obtaining Marshall's confession, the district court properly entered summary judgment in her favor.
 
 
 20
 The thrust of Marshall's First Amendment claim is that by virtue of Officer Ilczuk's alleged coercion, Marshall's "right not to speak" was also violated. This claim is essentially subsumed in Marshall's Fifth Amendment claim; because he has failed to demonstrate any basis for relief under the latter, so too has he failed under the former.
 
 C.
 
 21
 Finally, Marshall contends that the district court erred in granting summary judgment in favor of the Mayor and City Council of Berlin. Having already determined that no "clearly established" constitutional right was violated here, we need not address these defendants' derivative liability under Sec. 1983. See Kopf v. Skyrm, 993 F.2d 374, 381 (4th Cir.1993). We do note, however, that Marshall presented little, if any, evidence that the alleged deprivation of his Fourth Amendment right to be free from unreasonable seizure was caused by a "policy or custom" of the municipality, as required by numerous Supreme Court cases, e.g., Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978), let alone any evidence that this asserted failure by the city was the result of its "deliberate indifference" to the rights of its inhabitants. See City of Canton v. Harris, 489 U.S. 378, 388 (1989).
 
 
 22
 Accordingly, the district court's order granting summary judgment in favor of Officer Ilczuk and the Mayor and City Council of Berlin, Maryland is
 
 
 23
 AFFIRMED.
 
 
 
 *
 In addition, the Supreme Court in Malley made clear that an officer's mistake in either regard is not cured by the fact that a magistrate subsequently issues a facially valid warrant. 475 U.S. at 346 n. 9 ("The officer then cannot excuse [her] own default by pointing to the greater incompetence of the magistrate.")