

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0149-14

**MICHAEL EDWARD DANSBY, SR., Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## KAUFMAN COUNTY

**COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.**

I join the majority opinion. I write separately to address, once more, the interplay

between the Fifth Amendment and polygraph tests that are required as a term of probation.

Although a judge may require polygraph testing a condition of probation, he may not revoke

probation based upon a valid invocation of the Fifth Amendment made as a part of polygraph

testing.[1] The simple solution to this seeming contradiction is for the State to formally grant

full-use immunity for any self-incriminatory statements a probationer makes during such

---

[1] *Dansby v. State*, 398 S.W.3d 233, 239-40 (Tex. Crim. App. 2013) ("It is well settled that the Fifth Amendment insulates probationers from compelled self-incrimination"; explaining that the State may validly insist on compelled incriminating answers if it first grants use immunity).

polygraph testing as part of the explicit terms of probation.[2]

The United States Supreme Court has explained that coerced waivers of Fifth Amendment rights are neither voluntary nor effective. For example, if an employer places his employee in a position to choose between self-incrimination and termination, any "waiver" of Fifth Amendment rights by the employee is legally coerced and ineffective.[3] Any such coerced, self-incriminating statements may not be used against that person in a future criminal proceeding.[4] They may not be used to revoke probation.[5] And they may not be used as the basis for terminating a person's participation in a sex-offender-treatment program, which termination is then used to revoke probation.[6]

Before a probationer may be required to make any statements that might incriminate him in a new offense (in response to a question such as, "How many other children you have sexually abused?"), he must be given full-use immunity[7] so that nothing he says will be used

---

[2] *See Smith v. State*, 70 S.W.3d 848, 860–61 (Tex. Crim. App. 2002) (State may offer use and derivative-use immunity if it needs to compel witness testimony, and that immunity agreement must be ratified by trial judge, but "[t]he trial court's role is very limited in this context.").

[3] *Garrity v. New Jersey*, 385 U.S. 493, 497-98 (1967).

[4] *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

[5] *Dansby*, 398 S.W.3d at 240 ("The State cannot reasonably have believed that it could penalize [Dansby] for invoking his Fifth Amendment privilege by revoking his conditional liberty *solely* on the basis of his refusal to answer questions that would tend to incriminate him during the course of the sexual history polygraph process—or, for that matter, during required sex offender group therapy sessions.").

[6] *Id.*

[7] The term "full-use immunity" includes both direct use of the declarant's self-incriminatory words and any evidence obtained indirectly or derivatively by investigating leads obtained from

against him in any future criminal proceeding. If the State does not offer full-use immunity, the probationer may always invoke his Fifth Amendment right against self-incrimination, and he may not be penalized for invoking that right.

Even though polygraph testing may be a helpful investigative tool, the technique itself is so scientifically unreliable that the results of polygraph testing are not admissible in court and therefore do not constitute evidence in a criminal proceeding, including probation-revocation hearings.[8] Nonetheless, use immunity must be extended to all coerced, self-incriminating statements made during polygraph testing, even in the investigative or sex-offender-treatment setting.[9] Several courts have noted that "we can discern no constitutional difference between polygraph testing and other forms of compelled testimony."[10] Similarly,

those words. *See Kastigar v. United States*, 406 U.S. 441, 457 (1972) (explaining the distinction between direct and indirect or derivative use immunity and stating that only full-use immunity substitutes for the Fifth Amendment right against self-incrimination); *In re Kilgo,* 484 F.2d 1215, 1220 (4th Cir. 1973) ( "Use immunity prohibits the witness's compelled testimony and its fruits from being used in *any* manner in connection with criminal prosecution of the witness." ) (citing *Murphy v. Waterfront Comm'n of New York,* 378 U.S. 52, 79 (1964)).

[8] *Leonard v. State*, 385 S.W.3d 570, 582 (Tex. Crim. App. 2012).

[9] *See, e.g., United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013) ("When the government conditions continued supervised release on compliance with a treatment program requiring full disclosure of past sexual misconduct, with no provision of immunity for disclosed conduct, it unconstitutionally compels self-incrimination."); *United States v. Behren*, ___ F. Supp.2d ___, 2014 WL 4214608, at *5-6 (D. Colo. Aug. 26, 2014) (in child-pornography case, probation condition requiring probationer to reveal complete sexual history to sex-offender-treatment agency during polygraph testing presented real risk of self-incrimination, thus supporting his claimed violation of his Fifth Amendment rights unless he was first granted use immunity).

[10] *Hester v. City of Milledgeville*, 777 F.2d 1492, 1495 n.6 (11th Cir. 1985); *see also Gulden v. McCorkle*, 680 F.2d 1070, 1073 (5th Cir. 1982); *Gardner v. Missouri State Highway Patrol Superintendent*, 901 S.W.2d 107, 114 (Mo. Ct. App. 1995) (stating, "polygraph examinations are subject to the same sort of *Garrity* analysis used in conventional questioning").

the government cannot "penalize the assertion of the [Fifth Amendment] privilege by imposing sanctions to compel testimony which has not been immunized."[11] Specifically, the government may not "constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."[12]

However, incriminatory statements may be compelled for purposes of community supervision generally and sex-offender-treatment programs in particular if the probationer is on notice that his self-incriminating statements are immune from future use against him. The Supreme Court explained,

> Our cases indicate, moreover, that a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's "right to immunity as a result of his compelled testimony would not be at stake."[13]

Federal courts disagree about how much "use immunity" notice a defendant is owed before he may be compelled to make self-incriminating statements. The Fifth, Eighth, and Eleventh Circuits have stated that a defendant is owed no explicit notice of "use immunity" because

---

[11]*Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *see also Turley*, 414 U.S. at 79-84; *Sanitation Men v. Commissioner of Sanitation*, 392 U.S. 280, 283-84 (1968); *Gardner v. Broderick*, 392 U.S. 273, 278-79 (1968).

[12] *Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Sanitation Men*, 392 U.S. at 284).

[13]*Murphy*, 465 U.S. at 435 n.7 (quoting *Sanitation Men*, 392 U.S. at 284); *see also Cunningham*, 431 U.S. at 805-06; *Turley*, 414 U.S. at 84-85; *Gardner*, 392 U.S. at 278.

immunity attaches to coerced statements whether the defendant knows it or not.[14]

In contrast, the Seventh Circuit holds that the mere existence of use immunity floating somewhere in the legal stratosphere is not adequate notice to the person forced to make a statement.[15] That circuit states that the person is owed explicit, up-front notice because his knowledge of use immunity protects him from more than Fifth Amendment harm:

> Our rule is perhaps best understood as an anti-mousetrapping rule. Uncounselled persons are much more likely to know about their "Fifth Amendment" right than they are to know about an immunity that qualifies the right. Asked to give answers to questions put to them in the course of an investigation of their arguably criminal conduct, they may instinctively "take the Fifth" and by doing so unknowingly set themselves up to be fired without recourse.[16]

Meanwhile, the Fourth and Tenth Circuits have expressly refused to address what level of use immunity notification is required.[17]

I think that the Seventh Circuit approach is preferable in probation cases for two reasons. First, up-front notification eliminates the possibility of misunderstandings and

---

[14] *Gulden*, 680 F.2d at 1071; *Hill v. Johnson*, 160 F.3d 469, 471 (8th Cir.1998); *Hester*, 777 F.2d at 1494.

[15] *Atwell v. Lisle Park Dist.*, 286 F.3d 987, 990 (7th Cir. 2002).

[16] *Id.*; *see also Riggins v. Walter*, 279 F.3d 422, 431 (7th Cir. 1995) (per curiam); *United States v. Devitt*, 499 F.2d 135, 141 (7th Cir. 1974); *Confederation of Police v. Conlisk*, 489 F.2d 891, 894 (7th Cir. 1973).

[17] *Wiley v. Mayor & City Council of Baltimore*, 48 F.3d 773, 777 & n.7 (4th Cir. 1995) ("The *Garrity* immunity is self-executing."); *Grand Jury Subpoenas Dated Dec. 7 & 8 v. United States*, 40 F.3d 1096, 1102 n.5 (10th Cir. 1994) ("While this case does not require us to decide whether the government must affirmatively advise a police officer who is undergoing an internal affairs interview that the officer is not being forced to waive his or her Fifth Amendment rights, other circuits arguably have adopted such a requirement.").

unjust incarceration if neither counsel nor the trial judge recognize the illegality of revoking community supervision based on incriminating statements made during a polygraph examination that is required as a term of probation.  Because the law is admittedly unsettled about the conditions under which a defendant may be compelled to make self-incriminating statements during sex-offender-treatment programs, this presents a real danger. Second, even if no probationers are threatened with revocation based on their fear of compelled self-incrimination, up-front notification prevents unnecessary Fifth Amendment litigation by alleviating any concern in the probationer's mind about the future use of statements made during polygraph testing. The effort it takes to clarify use immunity is minimal compared to the time, effort, and money expended on protracted litigation and appeal.

In this case, for example, the pertinent term of probation stated:

> Submit to a polygraph examination when requested to do so by the Community Supervision Officer, at such times the Community Supervision Officer may direct & is required to pass said polygraph without any admissions.

I am uncertain what the phrase "without any admissions" is supposed to mean, but I am assuming that the trial judge meant that the probationer was not required to make any self-incriminating admissions during polygraph testing.  If that is what the trial judge meant, then everyone should have known that appellant could not be punished or penalized for invoking his right not to make "any admissions."  That phrase, however, is unclear.  Instead, that phrase could be eliminated, but the condition could have been expanded slightly to include the following statement:

> The probationer, _____, is granted full-use immunity for any statements or admissions of criminal conduct that he may make during the course of the polygraph testing and sex-offender-treatment program that are not the subject of this prosecution and for which the statute of limitations has not run. Nothing that the probationer says concerning crimes other than those for which he has already been convicted may be used against him in any future criminal proceeding. Signed, _____ (district attorney/assistant district attorney).

The grant of direct-and indirect-use immunity is an even trade for giving up the right against self-incrimination. That trade should be signed, sealed, and delivered before the defendant is placed on probation. Then everyone knows from the beginning what the probationer is required to do and how any incriminating statements will be protected from use in a future criminal proceeding.

With these additional comments, I join the majority opinion.

Filed: November 26, 2014
Publish