Stephen S. CORBIN, et al. Plaintiffs,

v.

**CITY OF SPRINGFIELD and Debra Rooke, Defendants.**

**C.A. No. 94–30259–MAP.**

United States District Court, D. Massachusetts.

Oct. 30, 1996.

---

Charles M. Campo, Jr., Evans Huber, Floyd H. Anderson, Steven M. Bloom, Kassler & Feuer, P.C., Boston, MA, for Stephen S. Corbin, Katlinn Corbin, Kira Corbin, Kezia Corbin.

Edward M. Pikula, City of Springfield, Law Department, Springfield, MA, for City of Springfield.

Kevin B. Coyle, Coyle, Dunbar, Geoffrion & Ward, Springfield, MA, for Deborah Rooke.

## MEMORANDUM REGARDING DEFENDANT ROOKE'S MOTION FOR SUMMARY JUDGMENT

(Docket No. 25)

PONSOR, District Judge.

### I. INTRODUCTION

Dorene Patrakis Corbin died on December 27, 1991 when her family car was struck by a

stolen vehicle being pursued by defendant Debra Rooke, an officer of the Springfield Police Department.

Dorene's husband, plaintiff Stephen Corbin ("Corbin"), and his minor daughters Katlinn, Kira and Kezia, have filed a sixteen-count complaint against Rooke and the City of Springfield. Counts VI through X pertain specifically to defendant Rooke; these counts alone are now the subject of the Motion for Summary Judgment before the court.

In Counts VI and VII, Corbin alleges on his own behalf and on behalf of his deceased wife, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, a violation of substantive due process based upon the death of his wife and his own injury. In Counts VIII through X, Corbin's three minor daughters allege violations both of their associational rights and their rights to substantive due process, based upon the death of their mother and the damage to their relationship with their father.

As to Counts VI and VII Rooke contends, first, that she is protected by the doctrine of qualified immunity and, second, that, if she does not enjoy qualified immunity, her actions even viewed in the light most favorable to the plaintiff do not rise to the level of a substantive due process violation. As to the three counts pressed against her by the minor children, Rooke argues that they lack merit as a matter of law.

The qualified immunity question is close. For the reasons set forth below, however, the court must conclude that a reasonable police officer in Rooke's position on December 27, 1991 would not have known that her actions posed a risk of any violation of the *constitutional* rights of persons in the position of the plaintiffs. The question of the legal sufficiency of the claims of the minor children is less difficult; those asserted causes of action are unsupportable as a matter of law. In sum, the defendant's motion will be allowed.

## II. FACTUAL BACKGROUND

The facts are viewed in a light most favorable to the plaintiffs. At approximately 7 p.m. on December 27, 1991, Rooke was dispatched to investigate a report of a breaking and entry into two cars in the East Forest Park section of the City of Springfield. When one of the victims identified the alleged perpetrators at the scene, the suspects ran to a grey Pontiac Grand Am and drove away. Rooke returned to her cruiser and began following the suspects' vehicle. Although it was after dark, the Grand Am did not activate its lights.

Rooke soon succeeded in stopping the car and approached it on foot, whereupon the suspects again drove off. Returning to her cruiser, Rooke pursued the vehicle with her blue overhead emergency lights flashing. She chose not to use her siren at any time, but she did operate a secondary warning tone while proceeding through intersections. Rooke's explanation for not using her siren was that it was difficult to hear the radio with the siren on.

Approaching a red light, Rooke came up behind the Grand Am where it was stopped behind two other cars in a thickly settled residential neighborhood at the intersection of Harkness, Allen and Sumner streets. At this point she was able to observe and radio in the vehicle's license number. When the light turned green, the suspects quickly drove around the cars in front of them, through the intersection and down Allen St.

Although the evidence is contested (Rooke says she lost sight of the Grand Am at the intersection and only came upon it later after the accident had occurred), a jury could find, based on portions of the record properly before the court, that Rooke actively pursued the Grand Am down Allen St., with no siren and using only her blue lights, at speeds in excess of 60 miles per hour.

At the intersection of Allen St. and Roosevelt Avenue the Grand Am, travelling at the speed of 70 miles per hour or greater, still without its lights on, and pursued by Rooke at a distance of 150 to 200 feet, ran a red light and slammed broadside into Corbin's Toyota Camry. The Camry was thrown nearly 100 feet and the Grand Am crashed into a house on the corner 75 feet away.

Stephen Corbin had been on Roosevelt Avenue en route to a family dinner with his

wife and her father Michael Patrakis. His view of the intersection with Allen St. had been blocked by a house, and he never saw the Grand Am racing towards the intersection. However, his affidavit states that if he had heard a police siren from the direction of Allen St. he would have stopped before entering the intersection, and the accident would have been avoided.

The entire pursuit took between one and two minutes. It occurred entirely within a thickly settled residential and commercial area, on two-lane streets with posted speed limits of 25 and 30 miles per hour.

A subsequent investigation of Rooke's conduct by the Springfield Police Department concluded that Rooke failed to comply with the department's rules and procedures regarding high speed pursuits. Under these provisions, such a pursuit was not called for in these circumstances. Moreover, when undertaken, the chase was effectuated improperly, most importantly in that Rooke failed to communicate the details of the pursuit to her superiors and failed to use her siren.

Plaintiff's expert, Louis Reiter, a knowledgeable authority on police procedures, submitted an opinion that Rooke's actions "amounted to a reckless and callous indifference to the lives and safety of the citizens of Springfield." Plaintiff's Ex. 10 at 17. His submission notes that high speed chases are the second leading cause of citizen death through police action. Rooke, he says, should have known of the extreme danger to citizens in initiating such a pursuit, particularly in a congested area. His statement agrees with the police department's investigative findings and concludes that (1) no adequate justification existed for the high speed chase at all, and (2) the pursuit was carried out in flagrant violation of elementary standards of police conduct.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the movant can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is likewise appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As noted, in weighing a motion for summary judgment this court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Buenrostro v. Collazo*, 973 F.2d 39, 41 (1st Cir.1992).

## IV. DISCUSSION

### A. Qualified Immunity

■ Rooke alleges that she is entitled to qualified immunity on Counts VI and VII because the asserted rights of the plaintiff and his wife were not clearly established as of December 27, 1991. Generally, police officers performing discretionary functions are shielded from liability for their actions, provided their conduct violates no clearly established statutory or constitutional right of which the officer reasonably should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Floyd v. Farrell*, 765 F.2d 1, 4–5 (1st Cir.1985). In weighing the defense of qualified immunity at the summary judgment stage, this court must first identify the applicable law and then determine whether this law was clearly established at the time of the alleged violation. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. To phrase it differently, the court must first focus on whether any constitutional right was, in fact, violated, and, second, on whether a reasonable police officer at the time would have *known* he or she was violating this right.

■ The first step is essential. As the Supreme Court has noted, a "necessary concomitant" in the qualified immunity analysis is "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). *See also Watterson v. Page*, 987 F.2d 1, 7 (1st Cir.1993). Even if the constitutional right may have been established in a general sense, the "contours" of this right must be established with

sufficient clarity that a reasonable official would understand "that what he [or she] is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ This important principle has a prominent role in the court's assessment of the qualified immunity defense on the facts of this case. The First Circuit has cited with approval the language of retired Supreme Court Justice Powell in *Wiley v. Doory,* 14 F.3d 993 (4th Cir.1994), to the effect that the court's inquiry must focus "not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Singer v. State of Maine,* 49 F.3d 837, 845 (1st Cir. 1995), (quoting *Wiley* at 995). If there is a "legitimate question" as to whether an official's conduct amounts to a constitutional violation, then the qualified immunity defense protects that official. *Id.*

■ Here, the plaintiffs must persuade this court as a matter of law that Rooke's conduct in initiating and continuing a high speed pursuit, in the circumstances and in the manner described above, constituted, on December 27, 1991, without any legitimate question, a violation of the substantive due process rights of third parties injured by the vehicle she was pursuing.

■ It is important to emphasize that the issue is the *constitutional* significance of Rooke's action, not whether her behavior reflected bad judgment or negligence. The qualified immunity defense provides ample room for "erroneous decisions" and "mistaken judgments." *Wood v. Clemons,* 89 F.3d 922, 931, n. 9 (1st Cir.1996) (citing cases). Plaintiffs, in fact, may have a remedy for Rooke's simple misjudgments, if any, under the under the less exacting standard of the Massachusetts Torts Claims Act, Mass. Gen.L. ch. 258. To repeat, the defendant Rooke is entitled to qualified immunity from any claim under 42 U.S.C. § 1983 if the applicable *constitutional* law was "unsettled" as of the date of the incident. *Singer v. State of Maine,* 49 F.3d at 847–48. *See Aversa v. United States of America,* No. 95–2216 (1st Cir. August 21, 1996), (qualified

immunity to be decided "according to the law in effect at the time of the alleged violation").

Proceeding with the *Siegert* analysis, the first question then is: what constitutional right is implicated here? Plaintiffs claim that Rooke's actions constituted a violation of their substantive due process rights because her actions reflected reckless and callous indifference to their life and personal security. While some controversy exists between the circuits, it appears clear that in this circuit, in the right circumstances, reckless and callously indifferent behavior is sufficient to make out a substantive due process claim. *Germany v. Vance,* 868 F.2d 9, 18 (1st Cir. 1989). *But see, Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3rd Cir.1994) (en banc) (applying a "shocks the conscience" test in the context of a police pursuit case) *and Temkin v. Frederick County Commissioners,* 945 F.2d 716, 720 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (same). Refining the issue further, then, the question is: on December 27, 1991 would conduct of the defendant officer Rooke in initiating and continuing a high speed pursuit of a fleeing criminal in a manner that reflected reckless and callous indifference to the life and personal security of the plaintiffs have constituted a violation of their substantive due process rights?

The case law on point is surprisingly sparse. Plaintiffs cannot cite, and the court has not located, any cases decided before December 1991 within Massachusetts or even within the First Circuit suggesting that an officer conducting a high speed chase ran a risk of violating the substantive due process rights of third parties injured by the vehicle being pursued. One unreported district court decision in 1995 by Judge William G. Young, addressing an incident in August 1992, suggests that, with the right facts, a substantive due process claim might be made out. *Evans v. Avery,* C.A. No. 94–10194 (D.Mass. March 14, 1995), 1995 WL 170056; *modified,* 897 F.Supp. 21 (D.Mass.1995); *appeal docketed,* No. 95–2125 (1st Cir. October 2, 1995). In 1993, in a Rhode Island case, Judge Lagueux declined, with minimal discussion, to dismiss a case seeking damages for injuries suffered by a passenger in the

car actually being pursued. *Medeiros v. Town of South Kingstown,* 821 F.Supp. 823, 827 (D.R.I.1993).[1]

*Dicta* in some Court of Appeals decisions may be construed to support the emergence of a substantive due process claim of this sort at *some* time. In the Third Circuit's *Fagan* decision in 1994 Judge Sloviter observed that if the reckless and callous indifference standard applied (rather than the "shocks the conscience" test she adopted), then "arguably" a substantive due process claim might be made out in a case involving injuries to third persons during a high speed chase. The Tenth Circuit in *Medina v. City and County of Denver,* 960 F.2d 1493 (10th Cir. 1992), concluded that the district court erred in finding no possible substantive due process violation, but then affirmed dismissal of the case as against the officers on the ground of qualified immunity. *Id.,* at 1497. A recent case from the Ninth Circuit, *Lewis v. Sacramento County,* 98 F.3d 434 (9th Cir. 1996), recognized "deliberate indifference to, or reckless disregard for, a person's right to life and personal security," 98 F.3d at 441, as the appropriate standard and concluded that in California as of 1990 a substantive due process right existed in the case of a teenager on a motorcycle killed when struck by a pursuing police officer.

Plaintiffs' citation of the First Circuit's decisions in *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791 (1st Cir.1990) and *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989), affords them very little help. In *Landol–Rivera* the court concluded that, as a matter of law, the accidental shooting of a hostage did not constitute sufficiently egregious behavior to make out a substantive due process claim. *Gutierrez–Rodriguez* involved a deliberate shooting by police officers of an innocent civilian, a scenario far from these facts.

Given this background it would be a stretch to say that, in Massachusetts as of 1991, third parties such as the plaintiffs enjoyed a substantive due process right to be free of injuries resulting from recklessly and callously indifferent behavior exhibited by a police officer during a high speed chase.[2] However, given that some courts appear to have accepted the existence of such a right at least hypothetically, this court will accept the viability of such a constitutional claim and pass on to the next question: was this constitutional right clearly enough established that a reasonable police officer in Officer Rooke's position on December 27, 1991 would have known that her conduct constituted a violation of such a right? On this question, the answer can only be, no.

Of course, it is not necessary for plaintiffs to point to a decision directly on all fours with the facts of this case to avoid the shield of qualified immunity. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. The difficulty for plaintiffs is that virtually all the decisional law in this area slides away from their position.

A recent case directly on point is *Magdziak v. Byrd,* 96 F.3d 1045 (7th Cir.1996). In that case the police officer pursued another vehicle at speeds of up to 120 miles per hour, failed to operate his flashing lights or siren, and violated both the Illinois Vehicle Code and police directives. The vehicle being pursued eventually collided with another vehicle, killing the plaintiff's decedent. Judge Rovner reviewed the various circuit decisions involving claims of reckless conduct by police officers engaged in high speed chases. She concluded that, as of February 1993, "[w]ithout exception, the circuits to consider them had rejected those claims." 96 F.3d at 1047. While some of these cases, as noted above, appeared to recognize the theoretical existence of a substantive due process right, in no case had the officer's misconduct been

---

1. One First Circuit case, *Horta v. Sullivan,* 4 F.3d 2 (1st Cir.1993), does address a high speed pursuit, but in that case plaintiff unsuccessfully pressed a constitutional claim only under the Fourth Amendment for a wrongful "seizure." There was no analysis of any Fourteenth Amendment substantive due process claim.

2. As noted, some courts have held that, in a high speed chase case, the proper standard is whether the officer's conduct "shocks the conscience." *See Evans v. Avery,* 897 F.Supp. 21 (D.Mass. 1995). For purposes of this discussion, however, the court has assumed that the less onerous "reckless indifference" standard would apply.

found to reach a level rising to a constitutional violation. Many of these cases involved conduct whose egregiousness equalled or exceeded what has been alleged here. *See Jones v. Sherrill,* 827 F.2d 1102 (6th Cir. 1987) (police following closely at speeds of up to 135 miles per hour); *Roach v. City of Fredericktown,* 882 F.2d 294 (8th Cir.1989) (failure to operate siren and violation of state laws and police policies); *Temkin v. Frederick County Commissioners,* 945 F.2d 716 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (lengthy chase at speeds up to 105 miles per hour with failure to maintain radio contact with superiors).

Given what Judge Rovner characterized as the unanimous rejection of claims against police officers in these circumstances, she concluded that the defendant officer was entitled to qualified immunity. The defendant Rooke is entitled to the same immunity on the facts of this case as well. While a much stronger case might be made as to the presumed state of an officer's knowledge in 1996, in December of 1991 it simply cannot be fairly said that a reasonable police officer in defendant's shoes would have known that her high speed pursuit of a fleeing criminal, even if found to have been conducted in a manner that was recklessly and callously indifferent to the life and personal security of third parties, would rise to the level of a violation of the constitutional rights of the third parties. While Rooke's conduct might render her (or possibly her employer) liable in tort, she is shielded by qualified immunity from any liability under § 1983.

Given this conclusion it is unnecessary for the court to address defendant's alternative argument, that her conduct in any event did not rise to the level of "reckless indifference" necessary to support a substantive due process claim.

### B. *Substantive Due Process Rights of Minor Children*

■ The Corbins' three minor daughters attempt to assert their own, independent substantive due process right, claiming that their child-parent relationship was destroyed by state interference. This argument fails for two reasons. First, the children's claims depend on the claims of their father and deceased mother. Since the court has found that the defendant Rooke was qualifiedly immune from any claim under § 1983 for their injuries, the children's claims must also fail.

■ Second, this circuit has repeatedly rejected familial claims such as this in the context of civil rights litigation. In *Manarite v. City of Springfield,* 957 F.2d 953 (1st Cir.1992), *cert. denied,* 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992), the Court of Appeals reiterated that actions asserting associational rights may be prosecuted under the civil rights statutes only when the defendant's action was "directly aimed at severing or affecting the parent-child relationship." *Id.,* at 960. In an earlier case the court held similarly.

> State action that affects the parental relationship only incidentally, however, even though the deprivation may be permanent, as in the case of unlawful killing by the police, is not sufficient to establish a violation of an identified liberty interest.

*Pittsley v. Warish,* 927 F.2d 3, 8 (1st Cir. 1991), *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). *See also Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986).

### V. CONCLUSION

For the foregoing reasons the defendant Rooke's Motion for Summary Judgment is hereby ALLOWED in its entirety. The defendant's motion to strike exhibits will be denied as moot.