**Evelyn GONZÁLEZ–PÉREZ,
et al., Plaintiffs,**

v.

**Rafael GÓMEZ–ÁGUILA,
et al., Defendants.**

**Civil No. 00–2602(HL)(JA).**

United States District Court,
D. Puerto Rico.

Nov. 20, 2003.

Judith Berkan, Mary Jo Méndez–Vilella, G–11 O'Neill, Peter Berkowitz, San Juan, PR, for Plaintiff or Petitioner.

Ricardo L. Rodríguez–Padilla, Andrés W. López, San Juan, PR, Eileen Landrón–Guardiola, Edardo A. Vera–Ramírez, Centro Internacional de Mercadeo, Guaynabo, PR, Nelson Robles–Díaz, Federico Lora–Lopez, Nancy Santiago–Otero, Legal Services—P.R. Police Dept., San Juan, PR, for Defendant or Respondent.

*OPINION AND ORDER*

ARENAS, United States Magistrate Judge.

This matter is before the court on motion *in limine* filed by the defendants on November 6, 2003, requesting the exclusion from trial of plaintiffs' proposed expert witnesses. (Docket No. 216.) Plaintiffs' opposition was filed on November 12, 2003. (Docket No. 220.) After consideration of the arguments of the parties and for the reasons stated below, defendants motion will be DENIED.

## I. BACKGROUND

This case is set for trial starting on November 20, 2003. Specifically, the defendants move to exclude the testimony of Louis Reiter (hereinafter "Reiter"), plaintiffs' police administration expert, claiming that his opinion is unreliable and irrelevant to the issues in this case. Furthermore, the defendants argue that the testimony of David G. Townshend (hereinafter "Townshend"), plaintiffs' crime scene reconstruction expert, should be excluded because he has not performed an evaluation or reconstruction of the scene in this case, which in turn renders his methodology unreliable. In the alternative, the defendants contend that if the court deems Townshend testimony reliable, it should exclude his blood pattern analysis since he has admitted he is not an expert in that area.

The plaintiffs, as might be expected, disagree. They claim that the qualifications of their proposed experts are extensive and that their testimony is relevant to all of the issues to be tried in the case. Particularly, the plaintiffs contend that defendants' request for exclusion is principally based on a one-sided interpretation of the evidence and the assumption that the trier of fact will believe their version. In essence, the argument of the plaintiffs is that both experts possess considerable scientific, technical and other specialized knowledge and that their testimony will assist the trier of fact in the determination of the issues in this case.

## II. STANDARD FOR ADMISSION OF EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony at trial. It provides that:

If scientific, technical, or other specialized knowledge will assist the trier of

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court assigned to trial judges the role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies. Subsequently, the Court extended this gatekeeping function holding that it does not only apply to expert testimony which relies on scientific knowledge, but to testimony that is based on technical and other specialized knowledge as well. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

 Three requirements must be met before expert testimony may be admitted: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue. *Correa v. Cruisers, A Division of KCS Int'l., Inc.,* 298 F.3d 13, 24 (1st Cir.2002). The gatekeeping function of the trial court is " 'a flexible one' that depends upon the particular circumstances of the particular case at issue." *Thorndike v. Daimler-Chrysler Corp.,* 266 F.Supp.2d 172, 175 (D.Me.2003)(quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. at 150).

## III. ANALYSIS

### A. *Testimony of Louis Reiter*

Plaintiffs intend to present Reiter as their expert in police administration and practices. The report submitted by him addresses two issues. First, the manner in which Sergeant Juan Vargas (hereinafter "Vargas") supervised the Saturation Unit. Second, the actions of the defendant police officers in Monte Park. Specifically, Reiter's report addresses Vargas' complaint and disciplinary history. Vargas is alleged to be the supervisor most closely linked to the five agents directly involved with the shooting at Monte Park and the death of Anthony. It is alleged by plaintiffs that the five agents answered directly to Vargas on the night in question.

The defendants contend, however, that Vargas' record and complaint history as well as his supervision of the agents is irrelevant. They claim that Vargas was not involved in the events that gave rise to the complaint; that he was not present at the time of the shooting and that he arrived after the incident had occurred. Additionally, it is the defendants' contention that in the opinion submitted by Reiter regarding Vargas, there is no data regarding his role as a supervisor. There is no testimony; according to the defendants as to whether Vargas complied with the administrative orders addressed in the report and the report does not address the complaint and disciplinary record of any agent other than Vargas. Finally, the defendants assert that Vargas' complaint history will not help the trier of fact in determining whether his supervision of the Saturation Unit was inappropriate or aid the jury in determining any fact of consequence in the case. In the alternative, the defendants claim that if the court deems Reiter's testimony relevant, that it should be excluded because it is highly prejudicial and because its probative value is greatly

outweighed by the danger of unfair prejudice.

As to the second issue addressed in Reiter's report, namely the manner in which the agents intervened at Monte Park, the defendants claim that he offers no reliable basis for his opinion. Reiter opines that the agents should have waited a few hours to intervene until the celebratory shooting was over and that if they chose to intervene, they should have made a show of force by entering through the front gate with lights, sirens and a number of agents. Reiter admits, however, that celebratory shootings is not considered a problem, at least in the jurisdictions in which he has operated, and that he could not recall any state within the United States that had enacted a plan for dealing with celebratory shootings. He also states that he has never recommended a course of action to any police department with respect to celebratory shootings.

The defendants do not seem to challenge Reiter's qualifications. In any event I find them more than sufficient in terms of his technical and specialized knowledge. Mr. Reiter is a former Deputy Chief of Police of Los Angeles, California, with over 20 years of experience. He is widely recognized as an authority on police administration and has been a faculty member for national level police management and specialized training programs for law enforcement personnel. In addition, he has published numerous articles in that field. Mr. Reiter spends a considerable amount of time training police officers and auditing police departments, frequently working as a consultant for the United States Justice Department. He is also a researcher and author of the chapters on internal discipline, training and management/employee relations for the *Police Task Force Report* of the National Advisory Commission on Criminal Justice Standards and Goals.[1]

Therefore, with said qualifications, there are only two issues before the court. First, whether Reiter's testimony regarding Vargas' complaint and disciplinary history is relevant and would assist the trier of fact in determining material issues in this case. Second, whether the basis for Reiter's opinion regarding celebratory shootings is flawed.

■ With respect to the first issue, I find that Reiter's testimony is relevant. His opinion regarding Vargas' complaint history is intrinsically connected to one of the main allegations in the complaint: supervisory liability. Specifically that of co-defendants Lieutenant Lilliam Rivera ("Rivera") and Colonel Agustín Cartagena ("Cartagena"). The crux of plaintiffs' allegation with respect to these co-defendants is that their failure to take into account Vargas' disciplinary record amounts to reckless or callous indifference to the rights of others, which in turn is the basis for the imposition of supervisory liability in a section 1983 action. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989) (crediting and quoting extensively Reiter's testimony), specifically, by disregarding Vargas' complaint record that involves serious accusations of violations of civil rights, and by allowing Vargas to

---

1. Reiter has testified in federal court in a number of cases and his opinions have been almost uniformly admitted. *See, e.g., Gutierrez v. City of San Antonio,* 139 F.3d 441, 447 (5th Cir.1998); *Foley v. City of Lowell,* 948 F.2d 10, 14–15 (1st Cir.1991); *Bordanaro v. McLeod,* 871 F.2d 1151, 1160 (1st Cir.1989); *Oliver v. City of Berkley,* 261 F.Supp.2d 870, 885 (E.D.Mich.2003); *Blair v. City of Cleveland,* 148 F.Supp.2d 894, 909 (N.D.Ohio 2000); *Corbin v. City of Springfield,* 942 F.Supp. 721, 724 (D.Mass.1996); *Diaz v. Salazar,* 924 F.Supp. 1088, 1098 (D.N.M.1996); *Ringuette v. City of Fall River,* 888 F.Supp. 258, 271 (D.Mass.1995); *Strachan v. City of Federal Heights,* 837 F.Supp. 1086, 1090 (D.Colo.1993); *Pottinger v. Miami,* 810 F.Supp. 1551, 1568 (S.D.Fla.1992).

supervise the Saturation Unit which has frequent contact with citizens. Vargas was assigned by Rivera to supervise the agents that were out on preventive patrol on December 31, 1999, including the agents involved in the shooting at Monte Park. Reiter's testimony is relevant. I also find that its probative value is not in any way outweighed by the danger of unfair prejudice.

■ With respect to the second issue, the defendants make a more persuasive argument. They claim that Reiter's opinion regarding celebratory shootings and what should have been done should be excluded inasmuch as he cannot state a basis for said opinion. The defendants cite to Reiter's deposition in which he states that he does not recall any police department with a particular plan to deal with celebratory shootings and does not recall any jurisdiction adopting such a plan. In addition, the defendants claim that his testimony should be excluded as to this issue because, as admitted by Reiter, in the United States celebratory shootings are not considered a problem.

Plaintiffs contend that defendants' objection is based on the fallacy that in order to testify as to celebratory shootings, Reiter will have to have a previous experience with written policies particularly dealing with that specific problem. To the contrary, plaintiffs claim that the appropriate response to celebratory shootings is a matter of "field tactics," an area in which Reiter has vast experience. Additionally, he was a member of the LAPD's "Unusual Occurrence Command Post," a specialized entity created to handle urban riots, mass demonstrations, urban arrest, etc. Reiter has been hired as an expert in one previous case involving celebratory shootings. (*See* Docket No. 220, Exh. C, at 18), and as a field tactics expert, knows the correct procedures for dealing with those kinds of situations according to plaintiffs. (*Id.* at 18–22.)

Defendants' argument rests on the incorrect presumption that to be able to testify about the appropriate response to celebratory shootings, Reiter must have some experience dealing with that particular field. Such contention ignores the main purpose of Rule 702 in that the purpose of expert testimony is to help the jury determine a fact in issue. The defendants offer no authority to their proposition that in order to give an opinion, an expert has to have previous experience on the particular situation at bar, namely celebratory shootings. Said conclusion would frustrate the purpose of Rule 702. I find that Reiter's qualifications with respect to field tactics are sufficient to allow his testimony regarding the appropriateness of defendants' response on the night in question. Accordingly, defendants motion *in limine* is DENIED as to this issue.

### B. *Testimony of David G. Townshend*

David G. Townshend ("Townshend") is plaintiffs' crime scene investigation and analysis expert. The defendants move to excluded his testimony from trial arguing that Townshend did not make an actual reconstruction of the scene, did not gather any evidence, and did not test the physical evidence obtained by those present at the scene. It is further claimed that Townshend's opinion consists only of general observations and complaints regarding some discrepancies arising from the physical evidence and the way in which said evidence has been interpreted by the experts who produced those reports. In essence, the defendants' contend that Townshend's opinion is not supported by his independent testing and therefore, does not satisfy the *Daubert–Kumho* requirements of relevance and reliability. Defendants' challenge is to Townshend methodology. In the alternative, the defendants

claim that his opinion would be irrelevant since he offers no alternate version as to what happened at the scene and that at the very least, his testimony regarding blood pattern analysis should not be allowed. Defendants object to the blood pattern analysis on the grounds that Townshend has admitted that he is not an expert in that field and that his knowledge consists of a four-hour segment of a conference by the Association of Crime Scene Reconstruction.

The plaintiffs argue to the contrary. They claim that the testimony of this experienced crime scene investigator and firearms expert will aid the jury. According to plaintiffs, he can testify as to the evidence gathered at the scene and its congruence with the police version. Townshend's methodology, plaintiffs claim, is explained at length in his report as well as in his deposition and it references the methods used by investigators both at the scene and for those who are not present. It is further asserted by the plaintiffs that what Townshend performed is a crime scene evaluation which consists of a review of the available documentation on the physical evidence, statements and other evidence. Mr. Townshend's experience qualifies him to testify about the wounds on Anthony's body, the number of shots fired, and to explain the use of weapons and the patterns in which they appeared at the scene. Finally, the plaintiffs argue that there is no support in the case law for defendants' proposition that an expert of Townshend's experience must be disqualified simply because he was not present at the scene.

■■ The defendants do not challenge Townshend's qualifications. They attack his methodology with respect to crime scene investigation. Nevertheless, I find that his methodology is neither unreliable nor irrelevant. To the contrary, he possesses scientific, technical, and specialized knowledge by virtue of his experience as a crime scene investigator and weapons expert, that qualifies him to render an opinion about the events in question. The defendants fail to provide any support for the proposition that Townshend's testimony must be excluded simply because he bases his opinion on an evaluation of the evidence gathered by persons other than him. After all,

> [u]nder Rule 702, a qualified expert witness may testify "in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*United States v. Mooney,* 315 F.3d 54, 62 (1st Cir.2002). Any flaws in Tonwshend's otherwise reliable methodology go to the weight and credibility of the evidence and not to its admissibility. *See United States v. Shea,* 211 F.3d 658, 668 (1st Cir.2000). The adversary process provides mechanisms to address any such flaws. *See United States v. Mooney,* 315 F.3d at 63 (explaining that once an expert's methodology has been deemed reliable, any flaw in his opinion may be exposed through cross-examination or competing expert testimony); *see also Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 85 (1st Cir.1998). I find that his testimony likely would assist the trier of fact in understanding and determining facts in issue.

■ The defendants, however, make a compelling argument with respect to Townshend's qualifications and experience in the field of blood pattern analysis. Townshend himself admits that he has but a four-hour segment of a conference by the Association of Crime Scene Reconstruction on bloodstain analysis. Defendants however submit one page of Townshend's deposition with respect to this issue. In said

page, it is stated that with regards to bloodstain analysis the only knowledge he has is the above-mentioned four-hour segment of a conference. (Defendants Memorandum of Law in Support of Motion in Limine, Docket No. 216, Exh. 7, at 8.) However, further down in that page he states that he has over twenty years of experience doing examinations of crime scenes with the Michigan State Police on blood patterns and blood spattering interpretation. (*Id.*) Inasmuch as the defendants move to exclude his testimony on blood pattern analysis, it is not clear from what was submitted by the defendants, whether or not he would have the qualifications to testify as to that or whether his opinion would be reliable. It is impossible to determine at this time. The defendants will have the chance to object to his qualifications as a blood pattern expert if and when that evidence is presented. Defendants' motion *in limine* is therefore DENIED as to this issue.

## IV. CONCLUSION

In view of the above, defendants motion to exclude the testimony of plaintiffs' proposed experts is DENIED.

SO ORDERED.