**Mikulas POPOVIC, M.D., Ph.D. Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civil No. PJM 96–3106.**

United States District Court, D. Maryland.

Feb. 27, 1998.

Paul S. Thaler, Lars H. Liebeler, Washington, DC, for Plaintiff.

S. Hollis Fleischer, U.S. Attorney's Office, Baltimore, Kerry William Kircher, U.S. House of Representatives, Washington, DC, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

Dr. Mikulas Popovic has sued the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, 2671 *et seq.* and one of its employees, Dr. Suzanne Hadley, based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). He claims that from 1990 to 1993 the United States, through its Department of Health and Human Services (HHS) and Hadley in particular, conducted an administrative investigation into his scientific research activities, making charges of scientific misconduct which were later found by an HHS appeals board to be "totally groundless."

Both his Original and First Amended Complaints are styled in five Counts: Count I—Negligence (against the United States); Count II—Invasion of Privacy (against the United States); Count III—Refusal to Hire for Reasons Contrary to Public Policy (against the United States); Count IV—Intentional Infliction of Emotional Distress (against the United States); and Count V—Violation of Due Process (against Dr. Hadley).

In an earlier phase of the proceedings the Court dismissed with prejudice the negligence, invasion of privacy and refusal to hire counts, but deferred ruling on the intentional infliction and violation of due process counts. The Court ordered Popovic to specify by amended complaint any facts which he contended might show that Hadley violated his due process rights after October 3, 1993. It further ordered Defendants to brief the issues of whether Popovic has stated a cause of action for intentional infliction of emotional distress under Maryland law and whether, with regard to the alleged constitutional violation committed by Hadley, the defense of qualified immunity applies.

Popovic has now filed a First Amended Complaint containing, as directed, more pre-

cise factual allegations as to Hadley's post-October 3, 1993 activities, but which also carries forward all five Counts from the original Complaint.[1] The United States and Hadley have filed separate Motions to Dismiss the First Amended Complaint in all respects.

The Court DENIES Popovic's Motion to Alter or Amend its Judgment with regard to Counts I through III of the Original Complaint and dismisses with prejudice those Counts in the First Amended Complaint to the extent that Popovic seeks yet again to renew the claims. The Court stands on the reasons given at the close of oral argument held on April 21, 1997, as incorporated in its Order dated April 22, 1997.

The Court now DISMISSES WITH PREJUDICE the remaining counts of the First Amended Complaint, namely Count IV against the United States for intentional infliction of emotional distress and Count V against Defendant Hadley for violation of due process.

### II.

The investigation that Popovic complains of involved AIDS researcher Dr. Robert Gallo and, among others, Popovic, his associate. The inquiry and investigation grew out of allegations that Gallo and his associates may have misappropriated the French AIDS virus isolated by the Institute Pasteur and thereafter may have misled government officials about the nature and timing of their research. The Court considers the involvement of Popovic in this affair.

### III.

Between 1980 and 1989, Popovic worked in the Laboratory for Tumor Cell Biology (LTCB) at the National Institutes of Health (NIH) in Bethesda, Maryland.[2] During that time he helped to isolate the AIDS virus and demonstrate that it was a retrovirus. He also developed a technique for growing the virus in the laboratory in quantities large enough to permit the commercial develop-

---

**1.** Popovic has filed a separate motion asking the Court to alter and amend its decision dismissing the first three counts.

**2.** NIH is part of HHS.

ment of a test to detect the virus in human blood.

In 1984, along with others, Popovic published the results of this AIDS research in a series of highly acclaimed articles in *Science* Magazine. He continued his research into the cause and cure of AIDS at the LTCB until 1989 when he accepted an offer to direct an advanced AIDS research laboratory at New Mexico State University funded in part by the National Cancer Institute of NIH. According to Popovic, when the New Mexico laboratory began to disband late in 1989, Gallo, then Chief of the LTCB at NIH, invited him to return to his old position. Certain intervening events, however, purportedly conspired to block his return.

In November of 1989, a reporter for the *Chicago Tribune* published an article citing possible wrongdoing on the part of Gallo and Popovic in their research. The article recounted a series of events implying that the isolate of the AIDS retrovirus allegedly discovered by the LTCB was in fact identical to an isolate discovered years earlier by the Pasteur Institute, the further suggestion being that the American researchers had misappropriated the French discovery.

There is no dispute that, in response to the *Tribune* article, NIH initiated a review of matters discussed in the article. Eventually, through its Office of Scientific Integrity (OSI) and its successor the Office of Research Integrity (ORI), NIH undertook a formal investigation of the Gallo/Popovic research.

Defendants maintain that their investigation proceeded in an appropriate manner and at a cautious pace. In October of 1990 Gallo and Popovic were notified that OSI would undertake a formal investigation of the *Science* paper. On June 25, 1991, after conducting several interviews and making initial determinations, OSI sent Popovic a draft report for review and comment. On September 6, 1991, Popovic and his counsel responded to the draft in writing, disagreeing with its conclusions. On March 27, 1992, a revised report was forwarded to the Office of Scientific Integrity Review (OSIR), the entity charged with, among other things, review of all final reports of investigations to assure that pro-

posed findings or recommendations are sufficiently documented. *See* 42 C.F.R. § 50.102.

In the Fall of 1992, ORI, having succeeded OSI and OSIR, prepared a further draft report and on December 29, 1992 issued its final report. In the final report, ORI concluded that Popovic had indeed engaged in scientific misconduct which consisted, according to the report, of the falsification of certain data and methods in reporting the research in the 1984 *Science* article. While proposing that certain administrative sanctions be taken against Popovic, ORI noted that its findings should not preclude his employment as a scientist.

On January 28, 1993, Popovic appealed ORI's findings and proposed sanctions to the Department of Appeals Board (DAB), which some months later held a *de novo* hearing. On November 3, 1993, a Panel of the Board issued a lengthy decision concluding that ORI had not proven by a preponderance of evidence that Popovic had engaged in scientific misconduct. Thus ended the NIH phase of the investigation.

Popovic takes a considerably less charitable view of the NIH investigation, asserting that OSI/ORI personnel violated his rights in numerous ways. Among other things, he says, the investigators failed to give him timely notice of the nature of the proceedings and charges against him; failed to advise him of his right to counsel; failed to adhere to specified standards in judging the issues; denied him meaningful participation in the proceedings including the opportunity to confront and examine witnesses and respond to evidence; and failed to provide a reasoned statement of the decision which they reached. He also alleges that OSI/ORI investigators, Hadley in particular, ignored or misrepresented evidence and leaked confidential information.

Popovic reserves special ire for Hadley who, he says, until mid–1991 "spearheaded the biased investigation." Thereafter, he alleges, she was detailed to the Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce of the United States House of Representatives where, with others on the Subcommittee, be-

tween 1991 and 1995, she continued an "overtly biased" investigation of him. But, according to Popovic, even after her departure from NIH in July, 1991, Hadley continued to participate in that agency's investigation of him, testifying against him at the *de novo* appeal hearing before the DAB in June 1993. Hadley also allegedly deprived Popovic of his due process rights when she testified before the House Appropriations Committee of the Maryland General Assembly on December 14, 1995, in opposition to a proposal to fund a research laboratory to be headed by Gallo.[3]

On October 17, 1995, Popovic took the required first step for pursuit of a claim under the FTCA by filing an administrative claim with NIH. *See* 28 U.S.C. § 2675(a). When NIH failed to act upon his complaint in timely fashion, *see id.*, he filed his action in this Court. That occurred on October 2, 1995.

### IV.

In assessing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept all well-pleaded facts as true. *Miree v. De-Kalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir.1990). Viewing the complaint in this light, the court will not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). As this Court has noted, "[a] motion to dismiss will be granted if there is either a

'lack of cognizable legal theory' or the 'absence of sufficient facts alleged under a cognizable legal theory.' " *Quraishi v. Shalala*, 962 F.Supp. 55, 57 (D.Md.1997) (citation omitted).

### V.

With regard to the two Counts remaining in Popovic's case, the parties skirmish over a number of defenses.

A) Both Defendants argue that the statute of limitations has run with regard to Popovic's claims. The United States contends that the Court lacks subject matter jurisdiction because all the events Popovic complains of occurred more than two years prior to October 17, 1995 when he filed his administrative claim. *See* 28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111, 113, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Hadley argues that since she resigned as Acting Director of OSI in 1991 and the present suit was not filed against her until October of 1996, she too is protected by the statute of limitations.

Responding to the United States, Popovic proposes a continuing tort theory; he asserts that in fact the OSI/ORI investigation continued up to November 1993 when the DAB issued its opinion exonerating him. As for Hadley's limitations argument, Popovic cites her participation on the Congressional Subcommittee; her alleged release of a Congressional report to the public without authority from the Subcommittee; her testimony at the DAB hearing; and her testimony before the Maryland General Assembly—all events occurring within 3 years of the filing of this suit. These incidents, Popovic believes,

---

**3.** Popovic takes issue with the fact that, in her Motion to Dismiss his original complaint, Hadley stated that she resigned her duties as Chief Investigator of OSI effective July 1, 1991. He contends that "[c]ontrary to her assertions, the record ... is replete with evidence that Dr. Hadley aggressively pursued (him) in her official capacity with the United States government for *at least more than 4 years after the July 1, 1991 date.*" (Italics in original) Popovic thus contends that Hadley's affidavit was filed in bad faith and asks for sanctions pursuant to Fed.R.Civ.P. 56(g). The motion will be DENIED. The allegations of the Original Complaint clearly refer to actions said to have

been taken by Hadley "in her capacity as Acting Director of OSI" and not in some other capacity thereafter. Nowhere does the Original Complaint suggest that Hadley's supposed due process violations were premised upon testimony that she gave at the proceeding before the DAB Panel, nor upon actions taken by her in connection with the Congressional oversight committee, nor upon her statement to the Maryland General Assembly. As Hadley points out, the latter two allegations are not even mentioned in the Original Complaint, while the first, mentioned in the Complaint, is not alleged to have been a due process violation.

again relying on a continuing tort theory, permit him to sue with regard to all of Hadley's prior conduct at OSI as well as her subsequent conduct while on the Subcommittee staff.

B) The United States next argues that any claim for intentional infliction of emotional distress arises out of an intentional tort for which there is an exception to the waiver of qualified immunity under the FTCA, in consequence of which the Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 2680(h); *U.S. v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). Popovic responds that his intentional infliction claim is not barred by the intentional torts exception because intentional infliction is not specifically excluded by the language of the statute. He cites *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) for the proposition that an intentional infliction claim is not the same as an excluded defamation claim.

C) Hadley contends that any claim against her in her capacity as a staff member of a U.S. Congressional Subcommittee is barred by the Speech or Debate Clause of the Constitution, U.S. Constitution, Article I, Section 6, Clause 1. She argues that the Clause has been held to apply not only to Members of Congress but also to Congressional aides insofar as the conduct of the aide would be a protected legislative act if performed by a Member. *See Gravel v. U.S.*, 408 U.S. 606, 618, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Popovic replies that the Supreme Court has routinely recognized actions taken by Members or their staffs which are not protected by the Speech and Debate Clause, including book publishing, speeches delivered outside Congress, and communications with the public through newsletters and press releases. *See Gravel*, 408 U.S. at 622–27; *Hutchinson v. Proxmire*, 443 U.S. 111, 127–133, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *U.S. v. Brewster*, 408 U.S. 501, 512–13, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

D) These arguments, interesting though they may be, need not be resolved here. What is clear to the Court is that there are two overriding considerations which are absolutely dispositive of what remains of Popovic's case. First, with regard to the due process claim against Hadley, whatever actions she may have taken and whenever she may have taken them, to the extent that she was acting as a federal official, she enjoyed qualified immunity.[4] Second, and in consequence of the first conclusion, Popovic has stated no cause of action for intentional infliction of emotional distress under Maryland law.

### VI.

A) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established that suit may be brought against a federal official in her individual capacity for a violation committed by the official, "under color of his authority," against an individual's constitutional rights. Qualified immunity, however, protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (emphasis supplied); *see also Bivens*, 403 U.S. at 397–98 (acknowledging, but deferring consideration of, qualified immunity defense). The "clearly established" right allegedly violated must be articulated with some precision; assertion of a generalized right to due process is insufficient. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) states the rule:

> The right the official is alleged to have violated must have been "clearly established" in a more particularized ... sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... in light of preexisting law the unlawfulness must be apparent.

4. Hadley also argues that she is entitled to absolutely immunity, a proposition the Court need not address in light of its ruling on the qualified immunity issue.

*Id.* at 640. See also *Wiley v. Doory,* 14 F.3d 993, 996·(4th Cir.1994).

■ Qualified immunity analysis thus begins with a consideration of what happened in fact, *Buonocore v. Harris,* 65 F.3d 347, 359–60 (4th Cir.1995), as well as a determination of the legal question of whether the defendant's actions were unconstitutional. *Harlow v. Fitzgerald,* 457 U.S. at 818.

Thereafter, if the court determines that the defendant acted illegally, it turns to the immunity questions:

(1) Whether the law governing the violation was "clearly established" at the time of the incident, *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); and

(2) Whether a reasonable person in defendant's position should have known of the illegality? *DiMeglio v. Haines,* 45 F.3d 790, 795 (4th Cir.1995).

B) Popovic alleges that, while working at NIH, Hadley coordinated a biased inquiry and investigation into his work; revealed confidential information in violation of OSI rules; made misrepresentations and false statements to him regarding the investigation; pursued the investigation without a reasonable basis to do so; knowingly applied an improper legal standard; intentionally disregarded dispositive and favorable evidence; caused unreasonable delays in the conduct of the investigation and the issuance of the OSI/ORI decision; refused to provide him with relevant evidence; interviewed him without informing him of his right to counsel; refused to identify witnesses against him; and did not give him a fair opportunity to know or rebut the charges against him.

Later, as a House Subcommittee staff member, Hadley purportedly "maliciously ignored exculpatory evidence and formed conclusions that were knowingly unsupported by any evidence" and "released without authorization" from the Subcommittee an investigative report purporting to be the "official" draft report of the Subcommittee.

Notwithstanding the passion with which these allegations are put forth, the Court finds that Popovic has articulated the violation of no constitutional right much less a clearly established one that Hadley knew or ought to have known about.

■ C) In analyzing a due process claim, courts first determine whether a protected property or liberty interest is at stake, and, second, if such interest is found to be present, consider what procedures must be followed before such rights may be imposed upon. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Popovic claims he was deprived of a property right in not being considered for government employment and a liberty interest by reason of damage to his reputation which made him unemployable. Both contentions are flawed.

■ (1) To the extent that he is arguing that he had a property or liberty right not to be investigated or not to have the investigation continue, or to have the investigation conducted in a particular way or at a particular pace, Popovic's claim has no foundation in law. An individual has no constitutional right not to be investigated for suspected violations by agencies authorized to conduct such authorizations. Indeed, to the extent that a government agency is performing an investigative as opposed to adjudicative function, it is not affecting legal rights and an individual is not entitled to the protections usually associated with the judicial process. *SEC v. O'Brien,* 467 U.S. 735, 742, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984); *Hannah v. Larche,* 363 U.S. 420, 440–53, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).[5] The fact that the sub-

5. In *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), the Supreme Court added a refinement to *Hannah v. Larche.* It held that the Louisiana Labor–Management Commission of Inquiry, while it did not "adjudicate in the sense that a court does", nonetheless "exercises a function very much akin to making an official adjudication of criminal culpability", so that individuals subject to its inquiries are enti-

tled to certain minimal due process rights. See also *Freeman & Bass, P.A. v. State of N.J. Commission of Investigation,* 486 F.2d 176, 178 (3rd Cir.1973). But the point is that before typical due process protections are brought into play, the inquiry must go beyond an investigation and become accusatory in nature. In *Jenkins* the state commission was charged with investigating certain criminal law violations and suggesting

ject of an agency investigation may in fact receive certain procedural protections and that a formal report may issue in no way diminishes the validity of this proposition. *Hannah,* 363 U.S. at 420; *International Tel. & Tel. Corp. v. Local 134, International Brotherhood of Electrical Workers,* 419 U.S. 428, 442–48, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975). Finally, the Due Process Clause does not require anonymity of those investigated. *Freeman & Bass, P.A. v. State of New Jersey Commission of Investigation,* 486 F.2d at 178.

■ OSI was authorized by the Secretary of HHS to investigate allegations of scientific misconduct and to take administrative steps to protect the integrity of federal research. Statement of Organization, Functions and Delegations of Authority, 54 Fed.Reg. 11080, 11081 (1989). Its mandate was to oversee and/or conduct investigations into alleged instances of scientific misconduct and to make recommendations to the Office of the Assistant Secretary for Health, where they would be reviewed by OSIR. OSIR would then make a final recommendation to the Assistant Secretary regarding whether to impose sanctions. *See id.* 42 C.F.R. § 50.102.[6]

At all relevant times during the pendency of this case, the subject of an investigation had the right to request an administrative hearing before the HHS Department of Appeals Board (DAB) with respect to any ORI determination of scientific misconduct involving research. Opportunity For a Hearing on Office of Research Integrity Scientific Misconduct Findings, 57 Fed.Reg. 53125 (1992). DAB's charge was to conduct a trial-type hearing at which HHS would bear the burden of proving scientific misconduct by a preponderance of the evidence, *see id.;* Hearing Procedures for Scientific Misconduct, 59 Fed.Reg. 29809, 29811 (1994).

OSI/ORI conducted an investigation in this case but adjudicated none of Popovic's rights. What it did do was to recommend a finding of scientific misconduct at the conclusion of its investigation. This finding, however, was "merely preparatory to some further proceeding" and "'determined the rights and liabilities of no one.'" *Atlantic Richfield Co. v. U.S. Department of Energy,* 769 F.2d 771, 787 (D.C.Cir.1984). Popovic had no entitlement to any particular set of due process protections in connection with the OSI/ORI investigation.

■ Similarly, he has articulated no protected interest with regard to Hadley's work for the Congressional Subcommittee. Clearly the Committee was authorized to investigate the broad issue of the responsiveness of governmental institutions, funding agencies, and universities to allegations of scientific misconduct. The Subcommittee's six-year investigation did not focus upon the individualized guilt or innocence of Popovic with regard to the charges against him (which was but one episode in the investigation), but looked instead to the legislative purpose of insuring the implementation of a fair and reasonable system to handle allegations of scientific misconduct. *See e.g.* Report on the Activity of the Committee on Energy and Commerce for the 100th Congress. H.R.Rep No. 100–1114, at 335 (1988).

As with the OSI/ORI investigation, Popovic had no right not to have his case investigated by the Congressional Subcommittee, no right to have the Subcommittee discontinue its investigation, and no right to have the investigation conducted in a particular way. Most especially, he had no right to insist that the Subcommittee (much less a single Committee staffer) accept particular evidence as exculpatory—nor was he entitled to a guarantee that the Committee (or the staffer)

---

criminal prosecution of specific individuals; hence it became accusatory. In *Hannah* the Civil Rights Commission was found to hold no trials, determine no one's civil or criminal liability, issue no orders, and not to indict, punish or impose legal sanctions. *Hannah,* 363 U.S. at 441. "[A]ny adverse consequences to those being investigated, such as subjection to public opprobrium, were 'purely conjectural' and, in any case, were 'merely collateral'..." 363 U.S. at 443.

6. During the pendency of this investigation, Public Health Service ("PHS") reorganized its research integrity program. In June 1992, OSI and OSIR were abolished and their functions were consolidated and transferred to the newly created ORI. Statement of Organization, Function and Delegation of Authority, 57 Fed.Reg. 24262 (1992).

would not arrive at ill-founded conclusions about his case. Similarly he had no protectable interest in the fact that a staffer, without Committee authorization, might release a Committee report that in some way contained references to his activities.

Because he had none of the alleged due process rights he contends Hadley denied, Popovic has established no constitutional violation on her part. Arguably, even if he had one or more of these rights, he has certainly not shown that such rights were clearly established or that Hadley knew or should have known she was violating them.

■ (2) Popovic argues that he was denied a liberty interest by reason of the damage the investigation caused his reputation. But there is no constitutional protection of a person's interest in his or her reputation alone. *Paul v. Davis,* 424 U.S. 693, 710–712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Such protection is required whenever the government action "distinctly alter[s] or extinguishe[s] a right or status recognized by . . . law." *Id.* at 711. *Termination* from employment represents distinct alteration or extinction in this context. *See Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir.1990). But harm to reputation, to the extent that it creates difficulty in a pending *future* employment, is insufficient to establish violation of a liberty interest. *Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Popovic voluntarily left his employment with HHS in 1989. He was never terminated by NIH.[7] The facts in the present case are therefore squarely within the facts of *Siegert* where the plaintiff voluntarily resigned his position at a federal hospital facility and several weeks later was purportedly defamed by a letter written by a superior at his hospital. *Siegert* held that, to the extent that damage may flow "from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action." *Siegert,* 500 U.S. at 234. That holding applies with full force and effect here, both to the OSI/ORI

investigation and the House Subcommittee investigation. Popovic had no protected liberty interest that could be affected by what occurred.

■ 3) The foregoing analysis suffices to close the door on Popovic's constitutional claim, but a further observation is in order and it is this. Contrary to Popovic's contentions, it is apparent that throughout the investigative and adjudicative process, he in fact consistently received appropriate process.

Due process is a concept that requires "such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation omitted). The primary requirements are notice of the proposed action and an opportunity to respond. *Id.* at 546.

When the formal investigation of Popovic began, he received notice of the allegations against him and was given an opportunity to respond. Indeed, he responded both in interviews and by presenting evidence. Throughout most of the formal investigation, he was represented by counsel. He was given an opportunity to respond and through counsel he responded to the draft report issued by OSI. He pursued his appeal rights through the DAB hearing, again represented by counsel, and he introduced evidence, cross-examined witnesses and presented arguments on his behalf. It can hardly be overlooked that Popovic was ultimately successful in having the DAB overturn ORI's recommended finding of scientific misconduct. Without question, his success in achieving that was owing in no small measure to the procedural protections he in fact received.

Summing up, Popovic has demonstrated no violation of a due process right and no viola-

---

7. Moreover, as noted earlier, ORI was careful to say that its findings vis-a-vis Popovic should not

preclude his employment as a scientist.

tion of a clearly established constitutional right that Hadley knew or should have known she was contravening. The qualified immunity inquiry is at an end. Hadley enjoys that immunity and Popovic's constitutional claim fails.

### VII.

In light of the foregoing, any claim of intentional infliction of emotional distress against the United States necessarily collapses.

■ Under the Federal Tort Claims Act, the law of the state in which a tort occurs defines the cause of action against the Government. 28 U.S.C. §§ 1346(b), 2674. Maryland recognizes the tort of intentional infliction of emotional distress where a defendant's intentional or reckless and extreme and outrageous conduct causes plaintiff to suffer severe emotional distress.[8] *See Batson v. Shiflett,* 325 Md. 684, 734–35, 602 A.2d 1191, 1216 (1992). But a defendant is not liable if the plaintiff fails to prove any one of these elements. *Id.*

■ Whatever criticisms may be made of the OSI/ORI/ U.S. Congress/"Hadley" investigations, they were not, as a matter of law, intentional or reckless, nor were they extreme and outrageous. In the white hot glare of the international controversy surrounding discovery of the AIDS virus, the record is clear that NIH made an overall reasonable attempt to look into serious allegations of scientific misconduct. However emotionally distressing and expensive the investigation may have been for Popovic, nothing occurred in the proceedings that exposes the Defendants to civil liability after the fact.

The Court will enter a separate Order dismissing Counts IV and V of the First Amended Complaint and closing the case.

---

8. With regard to the extreme and outrageous component, Maryland's standard is extremely high. The conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Harris v. Jones,* 281 Md. 560, 567, 380 A.2d 611, 614 (1977) (citation omitted).