Robert D. CUNNINGHAM, Jr., Plaintiff,

v.

Richard W. RILEY, Secretary, United States Department of Education, Defendant.

No. C.A. 99460–SLR.

United States District Court, D. Delaware.

May 16, 2000.

Robert D. Cunningham, Jr., M.D., plaintiff pro se.

Carl Schnee, United States Attorney, Patricia C. Hannigan, Assistant United States Attorney, United States Attorney's Office, Wilmington, DE, for defendant, of counsel Kathryn M. Woodruff, United States Department of Education, Washington, D.C.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Plaintiff Robert D. Cunningham, Jr. filed this action on July 20, 1999 against defendant Richard W. Riley, Secretary, United States Department of Education, alleging violations of his Fifth Amendment due process rights. (D.I. 1 & 2) Plaintiff's allegations arise out of the Department of Education's Office of Civil Rights' ("OCR") actions with respect to allegations of discrimination in violation of § 504 of the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 794, on the part of the Delaware Division of Public Health ("DDPH"). (D.I. 1, 2, & 14) Plaintiff seeks injunctive relief; specifically, he is asking this court to order OCR to address in a "clear and explicit response" his allegations of discrimination. (D.I. 1, 2, & 14)

Currently before the court is defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). (D.I.15) For the following reasons, defendant's motion shall be granted.

## II. BACKGROUND

This case has a convoluted factual background, which the court will refrain from paraphrasing in any detail.[1] Suffice to say, plaintiff on or about February 23, 1994 filed a complaint with the Department of Justice, alleging numerous violations of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., by his ex-employer DDPH. His complaint centered on DDPH's alleged policy of withholding diagnostic information from the families of disabled children. Five years earlier, in 1989, plaintiff had resigned his employment with the Delaware Child Development Watch Program, a component of DDPH, in part because of a

---

1. The court notes that the facts essentially are    undisputed.

dispute over this alleged policy. Between the time of his resignation and the filing of his complaint with the Department of Justice, plaintiff had complained about this policy to numerous State agencies and administrators.

Determining that it lacked jurisdiction over plaintiff's complaint, the Department of Justice on June 8, 1992 forwarded the complaint to the Department of Health and Human Services' Office for Civil Rights. This office subsequently determined that it too lacked jurisdiction over the matter and referred the complaint to the Department of Education's Office of Special Education and Rehabilitative Services ("OSERS") in July 1994. OSERS later notified plaintiff that it had referred his complaint to the State of Delaware for processing.

On May 14, 1996, plaintiff filed suit against DDPH in the United States District Court for the District of Delaware, alleging violations of 42 U.S.C. § 1983. He subsequently amended his complaint to add § 504 discrimination allegations. Specifically, he alleged that the withholding of diagnostic information and the mislabeling of disabled children "results in discrimination against the handicapped because it misleads families away from government-funded education, social and medical services." (D.I. 3 at A63) Plaintiff further alleged that he was discriminated and retaliated against in his employment when he refused to comply with and complained about DDPH's alleged policy of withholding diagnostic information.

On June 20, 1996, plaintiff filed a complaint with OCR, alleging the § 504 portions of his amended complaint in the District Court action. In light of the pending litigation, OCR declined to seek resolution of plaintiff's complaint, informing plaintiff that he could refile it within 60 days of resolution of the then pending litigation.

The District Court subsequently dismissed plaintiff's amended complaint in August 1997, which dismissal was affirmed by the Third Circuit Court of Appeals in February 1998. The Supreme Court denied certiorari on June 1, 1998.

On June 3, 1998, plaintiff refiled his complaint with OCR. On July 14, 1998, OCR wrote plaintiff, informing him that it did not have jurisdiction to consider his allegations concerning the withholding of diagnostic information. (D.I. 6 at A1) In that regard, OCR referred plaintiff to the Family Policy Compliance Office. (D.I. 6 at A1) OCR further indicated that it would not review plaintiff's allegations of discrimination and retaliation in his employment as they had been the subject of litigation. (D.I. 6 at A2) OCR informed plaintiff that it was closing its file on the matter. (D.I. 6 at A2)

Despite OCR's response, plaintiff continued to pursue his complaint with that office. By letter dated March 19, 1999, OCR informed plaintiff, *inter alia*, that

OCR is responsible for enforcing Section 504 of the Rehabilitation Act of 1973 (Section 504) and its implementing regulation, 34 C.F.R. Part 104, which prohibit discrimination on the basis of disability in programs and activities receiving Federal financial assistance. The D[D]PH is a recipient of Federal funds from the Department. However, the subject matter of your complaint does not involve issues covered by the regulations enforced by OCR. This fact prevents OCR from moving to complaint resolution in this matter.

Because your complaint involves issues of medical ethics or medical malpractice, your complaint would be more properly reviewed by the U.S. Department of Health and Human Services . . . .

OCR procedures require that complaints be filed within 180 days of the date of an alleged discriminatory act. Your OCR complaint is untimely, with regard to issues concerning employment, retaliation and alleged discriminatory practices during your tenure at D[D]PH, as there were several periods of time in excess of 180 days between the last date(s) of

alleged discrimination in this matter and any action you took pursuant to the filing of your complaint. OCR procedures allow for waiving that requirement when such complaints are filed within 60 days of the termination of any administrative or judicial proceeding. However, the materials you have submitted indicate that there are several periods of time in excess of 60 days between the termination of an administrative or judicial proceeding and any subsequent action you took pursuant to the filing of a complaint with OCR. Primarily, the material you have provided indicates that D[D]PH refused to rehire you in June, 1989. There was then a four-year hiatus between that date and July or August 1993, when you indicate that you wrote to Thomas Carper, Governor of Delaware and Carmen Nazario, Director of DPH, to report these illegal practices after DPH refused a second time to hire you in July, 1993. We also note that the U.S. District Court also found your complaint to be untimely.

\*    \*    \*    \*    \*    \*

With regard to your allegation that D[D]PH discriminated against you in its employment practices, as we informed you in our letter of July 14, 1998, OCR will not proceed to complaint resolution on allegations which have been the subject of litigation and for which a decision on the merits, including dismissal with prejudice, has been rendered. Similarly, if a matter that was in litigation has been settled, OCR will not proceed. We have reviewed the decision of the United States Court of Appeals for the Third Circuit, Docket Number 97–7521, affirming the dismissal of your complaint by the District Court for Delaware. OCR will not review those matters which have been adjudicated by the Federal Courts.

(D.I. 6 at A52–56)

On July 20, 1999, plaintiff filed this lawsuit against defendant. In his complaint, plaintiff alleges that OCR mishandled his § 504 allegations against DDPH and thereby violated his Fifth Amendment due process rights. Plaintiff's complaint contains fourteen (14) causes of action, which essentially fall into three categories. Counts 1 through 3 allege that OCR mishandled the complaint when it determined that it did not have jurisdiction to consider some of the allegations therein. Counts 4 through 13 allege that OCR misapplied the relevant statute of limitations to plaintiff's allegations. Count 14 alleges that OCR misapplied the doctrine of res judicata to those allegations that had been addressed in the District Court action.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court primarily must consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case as well as exhibits attached to the complaint may also be taken into account. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). In ruling on a 12(b)(6) motion, the factual allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*). Moreover, the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from those allegations. *See Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). Accordingly, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (*per curiam*). Thus, the "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *accord Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). Where, as here, the

plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 456 (3d Cir.1996).

## IV. DISCUSSION

Arguing that OCR's investigation did not implicate any adjudicatory powers, defendant seeks to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted. The Supreme Court in *Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), held that persons whose conduct is under investigation by the United States Commission on Civil Rights are not entitled by virtue of the due process clause of the Fifth Amendment to rights such as apprisal, confrontation, and cross-examination. *See id.* at 441–46, 80 S.Ct. 1502. The Court noted that

> "[d]ue process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.... Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

*Id.* at 442, 80 S.Ct. 1502. In rejecting the appellants' challenge to the procedures of the Civil Rights Commission, the Court emphasized the investigatory function of the Commission:

> [I]t's function is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action.

*Id.* at 441, 80 S.Ct. 1502. The Court concluded that

> when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.

*Id.* at 442, 80 S.Ct. 1502.

■ The Court reaffirmed its decision in *Hannah* and elaborated further on the distinction between investigative agencies and adjudicatory or accusatory agencies in *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In *Jenkins,* the Court found that the plaintiff had stated a cause of action that the procedures of the Louisiana Labor–Management Commission of Inquiry failed to meet the requirements of due process. *See id.* at 431, 89 S.Ct. 1843. After reviewing the Act authorizing creation of the Labor–Management Commission, the Court distinguished that body from the Civil Rights Commission in *Hannah.* While the Labor–Management Commission

> does not adjudicate in the sense that a court does, nor does the Commission conduct, strictly speaking, a criminal proceeding ... [n]evertheless, the Act, when analyzed in light of the allegations of the complaint, makes it clear that the Commission exercises a function very much akin to making an official adjudication of criminal culpability.... In

short, the Commission very clearly exercises an accusatory function; it is empowered to be used and allegedly is used to find named individuals guilty of violating the criminal laws of Louisiana and the United States and to brand them as criminals in public.

*Id.* at 427–28, 80 S.Ct. 1502. Given this view of the purpose of the Labor–Management Commission, the Court concluded that its procedures did not meet minimal due process requirements, specifically mentioning the Act's limitations on the rights of a person being investigated to confront and cross-examine the witnesses against him. *See id.* at 428, 80 S.Ct. 1502. Thus, in order for due process protections to attach, the inquiry must go beyond an investigation and become accusatory in nature. *See Hannah,* 363 U.S. at 442, 80 S.Ct. 1502. Consistent with this precedent, the court must first determine the nature and function of OCR's action with respect to plaintiff's allegations, and then decide whether, in light of this finding, the procedures complained of violate the due process clause of the Fifth Amendment.

■ OCR is responsible for enforcing § 504 of the Rehabilitation Act and its implementing regulation, 34 C.F.R. Part 104, which prohibits discrimination on the basis of handicap in any program or activity receiving Federal financial assistance. 34 C.F.R. § 104.1 (1999). Consistent with this mandate, OCR has the duty to conduct investigations whenever a complaint alleging discrimination is filed by "[a]ny person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part."[2] *Id.* at § 100.7(b). Included within the ambit of protected activity is the filing of complaints; thus, the harassment or intimidation of individuals who file complaints with OCR is prohibited. *See id.* at § 100.7(e). Investigations conducted by OCR

include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this part.

*Id.* at § 100.7(c). If discrimination is detected, the Secretary of the Department of Education or his designee is directed to inform the recipient of the matter and attempt resolution through informal means. In order to overcome the effects of discrimination, the Assistant Secretary of OCR may require the recipient to take such remedial action as is deemed necessary. *See id.* at § 104.6. If the noncompliance cannot be corrected through informal avenues, the Secretary of the Department of Education may effect compliance

by the suspension or termination of or the refusal to grant or to continue Federal financial assistance or by any other means authorized by law. Such other means may include, but are not limited to, (1) a reference to the Department of Justice with a recommendation that appropriate proceedings be brought to enforce any rights of the United States under any law of the United States (including other titles of the Act), or any assurance or other contractual undertaking, and (2) any applicable proceeding under State or local law.

*Id.* at § 100.8(a). An order terminating, suspending, or refusing to grant or continue Federal financial assistance cannot be effected until the applicant or recipient has been given notice and the opportunity for a hearing. *See id.* at § 100.8(c).

■ In the case at bar, OCR's investigation of plaintiff's allegations of § 504 violations did not implicate any adjudicatory powers. Rather, OCR merely processed the complaint pursuant to federal regula-

2. The procedural requirements of the regulation implementing Title VI of the Civil Rights Act of 1964 are incorporated by reference in

the regulation implementing § 504 of the Rehabilitation Act. *See* 34 C.F.R. § 104.61.

tions, an investigative as opposed to an adjudicative function. In so doing, OCR determined it did not have jurisdiction to pursue plaintiff's allegations. OCR having made such a determination, the Secretary of the Department of Education was in no position to exercise his adjudicatory power to terminate a recipient's Federal funding. In the absence of the exercise of adjudicatory power, i.e., when only the investigative powers of an agency are utilized, due process considerations do not attach. *See, e.g., Hannah,* 363 U.S. at 442, 80 .S.Ct. 1502; *United States v. Elias,* 465 F.2d 765, 769–70 (3d Cir:1972); *Popovic v. United States,* 997 F.Supp. 672, 678 In processing and investigating plaintiff's complaint, OCR did not affect plaintiff's legal rights. At all times, plaintiff was free to file suit against the DDPH under § 504 of the Rehabilitation Act of 1973, and the actions of OCR had no effect on such claims or their *de novo* review by a court of competent jurisdiction.[3] *See, e.g., Connor v. EEOC,* 736 F.Supp. 570 (D.N.J. 1990); *Francis–Sobel v. University of Maine,* 597 F.2d 15 (1st Cir.1979). Accordingly, to the extent that plaintiff is arguing he had a property or liberty right to have OCR's investigation continue or be conducted in a particular way, his claim has no foundation in law as he had no entitlement to any particular set of due process protections in connection with OCR's investigation.[4]

## V. CONCLUSION

For the foregoing reasons, the court finds that plaintiff's complaint fails to state a cause of action against defendant Richard W. Riley, Secretary, United States Department of Education. Accordingly,

the court shall grant defendant's motion to dismiss. (D.I. 15)

---

**3.** As noted above, plaintiff did file suit in the United States District Court for the District of Delaware, alleging violations of § 504. ·That the suit was dismissed with respect to plaintiff's allegations of discrimination and retaliation in his employment for failure to assert standing is irrelevant to the analysis at bar.

**4.** Having so decided, the court need not address defendant's assertion that plaintiff has no private right of action against the Department of Education under § 504 and no right of direct action against the Secretary or the Department of Education under the Administrative Procedure Act.